Rudolph L. Mazzei, J.
Defendant was charged with having violated section 235.05 of the Penal Law on April 12, 1973. The case was tried by the court without a jury upon defendant’s waiver. At issue is the purchase by a police officer from the defendant of one magazine entitled, "Liaison”. The testi *96 mony is basically uncontroverted. The premises wherein the police officer purchased the allegedly obscene book is an ordinary bookstore entered from the street in a shopping center. This store contains a variety of reading material. In the front main portion of the store, the material displayed is the usual material one would expect to find in a bookstore ranging from light fiction to cook books, texts and technical publications. There is a separate rear section, physically separated from the rest of the bookstore by walls and a door. There are signs posted restricting the admission into this section of the bookstore to persons over the age of 21.
Also prominently displayed are signs which state "Adult material. No minors or governmental authorities may enter.” and "Material for sale only to . persons purchasing for educational or scientific purposes.” Additional signs are located by the cash register which read, "Purchaser represents that he is buying materials paid for at this cash register for scientific or educational use only.” This is a separate cash register within the enclosed section and purchases of any material from this section of the store are completed within the "adult” section. There is no public display either on the exterior of the premises or at the entrance to the "adult” section that would appeal to any prurient interest or erotic notions.
The police officer admittedly purchased the publication in question from the defendant on April 12, 1973. Defendant has raised the defense provided by subdivision 1 of section 235.15 of the Penal Law of the State of New York which states: "In any prosecution for obscenity, it is an affirmative defense that the persons to whom allegedly obscene material was disseminated * * * consisted of persons or institutions having scientific, educational, governmental or similar justification for possessing or viewing same.”
In recent years, there has been a flood of cases involving the relationship of sexually oriented material to the First Amendment of the United States Constitution and in spite of the recent decisions of the United States Supreme Court the flood continues until the cup verily overfloweth.
The instant case appears to be a case of first impression where the defense of section 235.15 of the Penal Law is squarely raised at trial for judicial determination.
The defendant in this case urges that in order to preserve the constitutionality of subdivision 1 of section 235.15 of the Penal Law, it must be interpreted as authorizing sales to all *97 adults. Defendant contends that to do otherwise would make the statute unconstitutional as having created an arbitrary and capricious classification for authorized sales, i.e.: sales, only to those of superior intellect or scholarship.
Where the constitutionality of a statute is called in question the statute must be interpreted if possible in a manner which will preserve its constitutionality (McKinney’s Cons Laws of NY, Book 1, Statutes, § 150). The statute involved here cannot be interpreted to mean that only formal educators, students or scientists are persons with the necessary justification to possess or view such material. " 'A classification "must be reasonable, not arbitrary, and must rest upon ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.’” ” (Eisentadt v Baird, 405 US 438, 447.)
Can there be any rational or constitutionally valid distinction between certified scientists, teachers, students or governmental officers on the one hand and the individual who seeks to conduct his own education? "Our whole constitutional heritage rebels at the thought of giving government the power to control men’s minds.” (Stanley v Georgia, 394 US 557, 565.)
A State may determine its statutory scheme for the regulation of obscene materials provided it does so in a constitutional manner (United States v Reidel, 402 US 351). The fact that it has done so by requiring a defendant to raise an affirmative defense and thereby prove his defense by a preponderance of evidence rather than providing an outright exception to the statute is within the State’s right. Once having done so it would be a denial of equal protection of the law (US Const, 14th Arndt) to establish arbitrary classifications of persons who are entitled to possess or view allegedly obscene material.
If this court is to construe subdivision 1 of section 235.15 of the Penal Law as being constitutional it must reject the People’s contentions that the statutory language creates special classes of customers distinguished from the rest of our citizenry by high I.Q.s or PH.Ds. Authorizing sales only to card carrying college professors or certified scientists is as unconstitutional as restricting sales by race, religion or sex.
To say otherwise would be to sanction an elite class reminiscent of the final commandment or Orwell’s Animal Farm that "all animals are equal, but some animals are more equal than others.”
*98 In order to sustain the constitutionality of the statute the court reads the affirmative defense afforded under subdivision 1 of section 235.15 of the Penal Law as authorizing sales to all adults and not a limited few.
The court notes that the language itself admits of this interpretation since it provides for sale for "similar justification” in addition to the more limiting classification.
Having established that the defense provided by subdivision 1 of section 235.15 of the Penal Law is available when the person to whom the material is sold is an individual as opposed to any member of an elite group, we must now turn to the question of whether or not the defendant has proved his defense by a preponderance of the evidence. The People have conceded in their brief, that the recipient can be a member of the general public but advance the position that the defendant must prove the ultimate use of the material. The statute does not speak in terms of the use to which the material will eventually be put, but rather in terms of the right to the purchaser to possess or view the material.
Stanley v Georgia (supra) recognized the right of all citizens to pursue their intellectual desires. But Stanley did not secure the means for this pursuit. (United States v Reidel, supra.) In United States v 12 200-Ft. Reels of Film (413 US 123), the Supreme Court stated that it would not extend the precise limits of Stanley v Georgia to permit the importation of obscene materials because they were imported for private use. But the court did say: "This is not to say that Congress could not allow an exemption for private use, with or without appropriate guarantees such as bonding, or permit the transportation of obscene material under conditions insuring privacy. But Congress had not seen fit to do so”. (United States v 12 200-Ft. Reels of Film, 413 US 123, 129, supra.)
The State of New York has seen fit to provide exemptions by way of an affirmative defense for the dissemination of obscene material. The defendant has, by posting the notices, shown his intent to bring himself within the letter of the law. He is not pandering as is found in Ginzburg v United States (383 US 463). The defendant is clearly avoiding a "mode of dissemination” which "carries with it a significant danger of offending the sensibilities of unwilling recipients or of exposure to juveniles”. (Miller v California, 413 US 15,19.)
The defendant is employed in the bookstore where "Liaison” and similar publications were kept in such a manner that *99 clearly prevented the foisting of such material upon an unsuspecting or unwilling public. Certainly some advisory caution would have to be given to the public and was in this case done so in a nontitillating or suggestive manner by signs indicating that the area contained adult material and that no one under 21 would be admitted.
The signs on the cash register and about the room made clear the terms of the sale by the defendant. He made an offer of sale under certain circumstances; that is, for lawful purposes. Purchasers were put on notice as in any contract offer of the terms of the sale. By his purchaser clearly indicated his acceptance of these terms. Therefore, at the point of sale which is also the point at which the criminal charge must be based, the purchaser by the acceptance of the terms of the sale demonstrated his educational, scientific or similar justification for possessing or viewing the material.
He furthermore, has such justification under Stanley v Georgia (supra). The People’s contention that the ultimate use of the material gives rise to the defense is not supported by the statute itself. The statute speaks of a defense to a prosecution which must necessarily be based upon the transaction of dissemination on the part of the seller and not what the purchaser with the educational or scientific justification ultimately does with the material. Under the People’s position, were a member of a legislative committee who purchased material to determine his position on the obscenity laws suddenly to post the publication on a billboard, the disseminator who in good faith sold the material to a person with a governmental justification would be denied the defense. The defense must obviously relate to the state of facts which exist at the time of the dissemination and not as to what occurs at some subsequent date.
The controlling factor is not the ultimate use of the material but the intent to sell to persons having the proper justification for having the material which must necessarily include the average individual engaged in intellectual pursuits no matter how stimulating that pursuit may be. The disseminator of such material has as much right to sell to a student of the school of hard knocks as to any recognized educator, student, scientist, or governmental employee.
The mode of defendant’s operation wherein signs were prominently posted giving notice that the material is sold for scientific or educational purposes and that the purchaser *100 represented that he was making the purchase for such purposes is clearly indicative of the defendant’s intent to operate within the statutory framework. The statutory scheme obviously envisions dissemination of obscene materials under certain circumstances. "These defenses (235.15) (1) place the main thrust of the obscenity statutes in proper prospective; namely, that the real evil to be policed and prosecuted is the commercial exploitation of filth.” (Commission Staff Notes to Penal Law, § 235.15; emphasis added.)
The fact that a profit is derived or that the subject matter is designed to entertain does not deprive it of its constitutional protection under the First Amendment (Winters v New York, 333 US 507; Joseph Burstyn, Inc. v Wilson, 343 US 495.)
It cannot be said that the fact that the seller of the material has received remuneration for the dissemination of material will deny him the benefit of the defense. Certainly, a medical professor teaching a course in psychology to a group of students which would include the showing of obscene materials for the purposes of studying the effect of such materials on them, would be entitled to raise the defense even though he is paid for giving the lecture.
The court cannot probe the mind of the purchaser of allegedly obscene material to determine whether or not, even if such person has the requisite justification for possessing such material, in the dark recesses of such person’s mind there lingers anticipation of future excitement upon the viewing of the material which he has purchased. "What is one man’s amusement, teaches another’s doctrine.” (Winters v New York, supra, at p 510.)
The court can only look at the circumstances surrounding the sale of the material to determine whether or not the purchaser has demonstrated the requisite justification for possessing or viewing the material. This the defendant has done by a fair preponderance of the evidence. The defendant has demonstrated through the use of the various signs, the precautions taken to prevent the foisting of material upon an unwary or unwilling public and in a manner which insures both privacy and protection of the public sensibilities.
After trial, for the above-stated reasons, this court finds that the defendant has met the burden required by section 235.15 of the Penal Law and accordingly finds the defendant not guilty. •