No. 50,321

STATE OF KANSAS, *Appellee,* v. STARR ENTERPRISES, INC., *Appellant.*

(597 P.2d 1098)

Opinion filed July 14, 1979.

*John H. Weston,* of Fleishman, Brown, Weston & Rohde, of Beverly Hills, California, argued the cause, and *David M. Brown* and *G. Randall Garrou,* of the same firm, and *James M. Glover,* of Glover, Joseph & Bergman, of Wichita, were with him on the brief for the appellant.

*Stephen E. Robison,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Vern Miller,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

McFARLAND, J.: This is a direct appeal by the defendant, Starr Enterprises, Inc., from a November 9, 1977, conviction of the crime of promoting obscenity (K.S.A. 1978 Supp. 21-4301). Defendant was fined $2,500.00.

The defendant was charged with two counts of promoting obscenity by commercially exhibiting two motion picture films: "Ghost Town" and "Affair in the Air." The defendant was acquitted as to "Affair in the Air" and convicted as to "Ghost Town."

The defendant raises four issues on appeal. The first two issues deal with the constitutionality of the statute under which the defendant was convicted (K.S.A. 1978 Supp. 21-4301), and the last two issues involve whether the film "Ghost Town" was obscene under the same statute.

K.S.A. 1978 Supp. 21-4301(3) provides:

"It is a defense to a prosecution for obscenity that the persons to whom the allegedly obscene material was disseminated, or the audience to an allegedly obscene performance, consisted of persons or institutions having scientific, educational, governmental or other similar justification for possessing or viewing the same."

In *State v. Next Door Cinema Corp.,* 225 Kan. 112, Syl. ¶ ¶ 4, 6, 7, 587 P.2d 326 (1978), this court held:

4. "In an appeal from a conviction of one count of promoting obscenity, K.S.A. 1977 Supp. 21-4301, the words scientific, educational and governmental contained in 21-4301(3) are sufficiently definite and are of such general usage and understanding that they adequately apprise members of the general public of the legitimate defenses available under the statute."

6. "In construing 21-4301(3) the language 'other similar justification' is found to be vague, indefinite and uncertain, neither adds to nor subtracts from the terms scientific, educational or governmental justification, is mere surplusage and may be stricken from the statute without violating the intent of the legislature."

7. "K.S.A. 1977 Supp. 21-4301(3), absent the language 'or other similar [justification],' is constitutional and the omission of the quoted language does not render the remainder of the section or statute unconstitutional."

The defendant asks this court to reconsider the *Next Door Cinema* decision, contending that the severance of "other similar justification" violates express legislative intent, judicially expands criminal liability and violates K.S.A. 21-3102(1) and the due process and equal protection clauses of the state and federal constitutions. The defendant further contends that the words "scientific, educational, governmental" are impermissibly vague.

These issues were before this court in *Next Door Cinema* and determined adversely to the defendant's position. In *Next Door Cinema,* 225 Kan. at 116-117, this court stated:

"The language in the defenses portion of our statute was taken largely from the American Law Institute Model Penal Code and the New York Penal Law. Our section, 21-4301(3), is essentially identical to § 235.15-1 of the New York Penal Law. Two New York trial courts have considered and interpreted the defenses provision of the New York law. *People v. Howell,* 90 Misc. 2d 722, 395 N.Y.S.2d 933 (1977) and *People v. Wrench,* 83 Misc. 2d 95, 371 N.Y.S.2d 833 (1975). Both cases involved the sale of allegedly obscene magazines to members of the public. Appellant relies heavily on the decision in *Howell* where the court found the words 'other similar justification' to be unconstitutionally vague and indefinite and as a result the entire statute was held invalid. The New York court stated: " '[T]he words "similar justification," subdivision 1 of section 235.15 provides an affirmative defense without reasonably definitive limits. The Legislature cannot have intended to include possession for every use (that would wholly negate 235.05, subdivision 1) but the descriptive words are too vague for us really to know what possessions are *not* for "similar justification." The net result is that the

statute (235.05, subdivision 1, in combination with 235.15, subdivision 1) simply does not adequately advise the would-be seller of obscene material what sales are criminal and what are not.' *People v. Howell,* 90 Misc. 2d at 727.

"The court in *Wrench,* after considering the underlying principles of statutory construction, determined that to uphold the constitutionality of the statute it had to be interpreted as allowing sales of obscene materials to all adults. The court stated at page 98:

" 'In order to sustain the constitutionality of the statute the court reads the affirmative defense afforded under subdivision 1 of section 235.15 of the Penal Law as authorizing sales to all adults and not a limited few.

" 'The court notes that the language itself admits of this interpretation since it provides for sale for "similar justification" in addition to the more limiting classification.'

*Wrench* was argued to the *Howell* court but that court was not impressed by the reasoning in *Wrench* and, rather than hold the statute constitutional on the basis of *Wrench,* found the statute unconstitutional.

"It is to be noted that the decisions in *Howell,* from the City Court of Buffalo, and *Wrench,* from the District Court of Suffolk County, were not appealed and we are not constrained to follow the reasoning of either of the New York trial courts."

Whereas *Howell* was not appealed, a subsequent case from the same court, using *Howell* for authority, was appealed. In *People v. Illardo,* 97 Misc. 2d 294, 411 N.Y.S.2d 142 (1978), the phrase "other similar justification" was held to be another area of defense, not unconstitutionally vague, and not violative of the due process clause of the United States Constitution. Although this court did not rely on *Howell* for the determination of vagueness in *Next Door Cinema,* we have considered *Illardo.*

We adhere to the decision in *Next Door Cinema* which controls the two issues relative to the constitutionality of K.S.A. 1978 Supp. 21-4301(3).

The defendant's third issue on appeal is whether obscenity as defined by K.S.A. 1978 Supp. 21-4301(2)(*a*) includes depiction of both actual and simulated ultimate sexual acts. The defendant contends that only depiction of actual sexual acts is proscribed by the statute and that the trial court erred in denying its motion for a directed verdict which was predicated on that contention.

K.S.A. 1978 Supp. 21-4301(2)(*a*) provides:

"Any material or performance is 'obscene' if the average person applying contemporary community standards would find that such material or performance, taken as a whole, appeals to the prurient interest; that the material or performance has patently offensive representations or descriptions of ultimate sexual acts, normal or perverted; and that the material or performance, taken as a whole, lacks serious literary, educational, artistic, political or scientific value."

*Miller v. California,* 413 U.S. 15, 24-25, 37 L.Ed.2d 419, 93 S.Ct. 2607 (1973), set the boundaries of state regulation of obscenity as follows:

"The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, . . . (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. . . . If a state law that regulates obscene material is thus limited, as written or construed, the First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary. [Citations omitted.]

"We emphasize that it is not our function to propose regulatory schemes for the States. That must await their concrete legislative efforts. It is possible, however, to give a few plain examples of what a state statute could define for regulation under part (b) of the standard announced in this opinion, supra:

"(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

"(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals."

The defendant argues that the omission of the *Miller* phrase "actual or simulated" from the Kansas statute was the result of legislative intent to exclude simulated acts from liability. The defendant's precise contention is as follows:

"All sexually oriented films 'depict or represent' sexual acts in some manner. The question under the Kansas statute, however, is not whether 'ultimate sexual acts' are suggested, nor whether the viewer might speculate whether the depicted sexual activities are suggested. Also irrelevant is the extent to which the viewer is persuaded that the actors are actually doing what they appear to be doing. The only relevant inquiry, for purposes of an obscenity statute, is whether 'ultimate sexual acts' are being revealed in the film so that the viewer is actually able to perceive them. The film involved in this case, 'Ghost Town', is simply not such a film."

Webster's New Collegiate Dictionary (1977) defines "simulate" as "to assume the outward qualities or appearance of, usually with the intent to deceive." In general parlance a simulation is something which has been made to look like something else, a fake, such as a simulated diamond. The defendant argues that, as far as sexually oriented films are concerned, the industry's definition is broader than just faked scenes. Also included in the industry's definition are scenes depicting actual acts where by virtue of the positioning of the camera, the viewer cannot be

positive whether the scene is real or faked. The State does not dispute that this is the industry's definition and agrees that under such a definition all ultimate sexual acts contained within "Ghost Town" are simulated as the camera is not positioned in a manner to conclusively establish whether the scene is actual or faked.

The State argues that the omission of "actual or simulated" from the statute does not indicate a legislative intent to include only depiction of "actual" sexual acts within the ambit of the statute. The State contends that the use of the word "representation" in the statute includes both actual or simulated acts.

In support of its position the State cites the following:

"The common definition of the word 'representation' includes the following:

'1. the act of representing. 2. the state of being represented. 3. the expression or designation by some term, character, symbol, or the like . . . 9. presentation to the mind, as of an idea or image. 10. a mental image or idea so presented; concept. 11. the act of portrayal, picturing, or other rendering in visible form.'

The Random House Dictionary of the English Language, p. 1217 (Random House, 1973). The common definition of the word 'represent' includes the following:

'1. to serve to express, designate, stand for, or denote, as a word, symbol, or the like does; symbolize . . . 7. to present or picture to the mind.' Id."

The effect of the omission of "actual or simulated" from a statute enacted in conformity with *Miller* apparently is an issue of first impression. If the defendant's contentions are correct, apparently the only proscribed motion picture films would be those filmed by myopic cameramen. We do not believe this is the legislative intent. The proscribed conduct includes depiction of both actual and simulated ultimate sexual acts. If the legislature desires to limit the proscribed conduct to depictions of actual sexual acts, it may do so by appropriate statutory amendment. The trial court did not err in denying defendant's motion for a directed verdict premised on the grounds that the portrayed sexual acts were simulated.

The defendant's fourth issue on appeal is that the film, as a matter of law, cannot be obscene under the statutory "taken as a whole" tests (K.S.A. 1978 Supp. 21-4301[2][a]) as less than one-half of its total footage depicts ultimate sexual acts. The defendant contends the trial court erred in denying its motion for a directed verdict which was predicated on this ground.

K.S.A. 1978 Supp. 21-4301(2)(a) provides:

"Any material or performance is 'obscene' if the average person applying contemporary community standards would find that such material or performance, *taken as a whole,* appeals to the prurient interest; that the material or performance has patently offensive representations or descriptions of ultimate sexual acts, normal or perverted; and that the material or performance, *taken as a whole,* lacks serious literary, educational, artistic, political or scientific value." Emphasis added.

### The defendant's argument is as follows:

"Appellant respectfully submits that this court's viewing of the film 'Ghost Town' will reveal that far less than half of the film involves depictions of simulated ultimate sexual acts. Accordingly, it is appellant's position that this film could not be found obscene because, when 'taken as a whole', the film was not dominated by depictions of ultimate sexual conduct appealing to a prurient interest in sex. See *Miller v. California, supra.*"

The defendant cites no authority in support of the proposition that "taken as a whole" means that the majority of the total film footage must contain depictions of ultimate sexual acts. The phrase seems to be used to eliminate segmented reviews of material, as expressed in *Penthouse Intern., Ltd. v. McAuliffe,* 454 F. Supp. 289, 303 (N.D. Ga. 1978):

"First, the 'taken as a whole' standard of *Miller* is not really new, *see Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), and simply reflects in essence the practical fact that an arguably obscene book or magazine is going to be published or banned as a discrete unit. It is practically impossible and legally impermissible for defendant McAuliffe to tiptoe through each and every 'Playboy', 'Oui' and 'Penthouse' vended in Fulton County, scissors in hand, and to excise those portions of the magazine thought to be obscene. A magazine is a 'whole' within the meaning of *Miller* and it must be judged as such."

The trier of fact is to judge the film as a whole in determining whether or not it is obscene. A few isolated film clips cannot be the sole basis of such determination. The entire film must be considered as a unit.

The contention that the film passes the "taken as a whole" tests if less than half of its footage is devoted to the depiction of ultimate sexual acts is without merit. Under this theory a 55 minute film including 28 minutes of totally black film and 27 minutes of ultimate sexual acts would as a matter of law pass the "taken as a whole" tests.

The trial court did not err in denying defendant's motion for a directed verdict premised on the grounds that the film could not be obscene as a matter of law by virtue of the fact that less than half of the film was devoted to depiction of ultimate sexual acts.

In accordance with the requests of the parties the court has viewed the film and holds that the jury's conviction of the defendant of the crime of promoting obscenity is supported by substantial competent evidence. Further findings are unnecessary as the defendant's objection to the trial court's denial of its motion for a directed verdict relates solely to the fact the film could not have been obscene as a *matter of law* because: (1) only "simulated" sexual acts were depicted; and (2) less than one-half of the film's footage was devoted to the depiction of ultimate sexual acts.

The judgment is affirmed.