OPINION OF THE COURT
Joseph P. McCarthy, J.
These defendants were charged in the City Court of Buffalo under separate informations with obscenity in the second degree in violation of section 235.05 of the Penal Law. Respondent Illardo was charged specifically with promoting obscene material by selling a magazine entitled "Puritan” to one John T. Dugan on May 2, 1978. Respondent Fare was charged specifically with promoting obscene material by selling a magazine entitled "Sexual Freedom Now” to John T. Dugan, Jr., on April 20, 1978. Both magazines had been judicially screened and preliminarily determined to be obscene (Penal *296 Law, § 235.00). Respondents moved below, pursuant to CPL 170.30 (subd 1, par [a]) and CPL 170.35 (subd 1, par [c]) that the informations be dismissed on the grounds that section 235.05 of the Penal Law, the proscriptive statute, and section 235.15 of the Penal Law, the statute which provides for affirmative defenses for certain persons charged under the proscriptive statute, when read together, are unconstitutional. The court below declared both the statutes unconstitutional on the authority of People v Howell (90 Misc 2d 722) and granted the motions to dismiss. The People now appeal.
Subdivision 1 of section 235.15 of the Penal Law provides as follows: "In any prosecution for obscenity, it is an affirmative defense that the persons to whom allegedly obscene material was disseminated, or the audience to an allegedly obscene performance, consisted of persons or institutions having scientific, educational, governmental or other similar justification for possessing or viewing the same.”*
The first question to be answered on this appeal is whether these respondents had the standing to make the motion below, their cases not having proceeded to trial, and respondents, therefore, not having reached the point of asserting any affirmative defenses, if such they have. It seems elementary that when a person is charged with a crime and that there is statutory provision for affirmative defenses with respect to the crime charged, a person is as equally entitled to be properly informed of any possible affirmative defenses as he is to be properly informed of the elements of the crime with which he is charged. Without belaboring this basic concept, I find that these defendants did have the standing to contest the constitutionality of the pertinent statutes by motion in the court below.
To get to the merits of the matter before us, all of respondents’ contentions with respect to subdivision 1 of section 235.15 of the Penal Law are based on the premise that the statute is so vague that men of common intelligence must be forced to guess at its meaning and well could differ as to its application and, therefore, it fails to meet the requirement of due process. (Cf. Smith v Goguen, 415 US 566; Papachristou v City of Jacksonville, 405 US 156; United States v Harriss, 347 US 612.) I find no such fatal vagueness. It is obvious that in *297 enacting the section, the Legislature recognized that certain persons and institutions have legitimate and even socially desirable reasons for viewing or possessing obscene materials. These are categorized in the statute as those having (1) scientific, (2) educational, (3) governmental, and (4) other similar reasons for such possessing or viewing. The words, "scientific”, "educational”, and "governmental”, have well understood and widely recognized general meanings and I feel that the average court or jury would not experience serious difficulty in determining whether a particular affirmative defense interposed by a defendant at trial would fit within one or the other of these three categories. Terms that are broad are not necessarily constitutionally vague. Consider the statutory definition of "obscene material”. Section 235.00 (subd 1, par [c]) of the Penal Law lists as one of the elements necessary to make any material or performance obscene that "considered as a whole, it lacks serious literary, artistic, political, and scientiñc value.” (Emphasis supplied.) These words are taken verbatim as one of the tests to determine obscenity from the decision of the Supreme Court of the United States in Miller v California (413 US 15). (Also, cf. People v Heller, 33 NY2d 314.) Certainly the word, "scientific” is no more definitive and no less vague in section 235.00 (subd 1, par [c]) than it is in subdivision 1 of section 235.15 of the Penal Law. Nor can it logically be argued that the words, "literary”, "artistic”, and "political” all pass constitutional muster, while the words, "educational” and "governmental” do not. Without belaboring the point I do not find the words, "scientific”, "educational” and "governmental” as contained in the statute to be so vague as to violate the due process clause.
We now turn to the phrase, "other similar justification”, as contained in subdivision 1 of section 235.15 of the Penal Law. As stated above the Legislature recognizes certain legitimate and valid reasons for possession of obscene materials by a limited segment of the population. It has provided that anyone accused of selling such matter to such persons or institutions should be afforded the opportunity to put forward the select character of the vendee as an affirmative defense. The Legislature chooses not to limit the select persons or groups to those having "scientific”, "educational”, and "governmental” justification, but also recognizes the possibility that there may be justifiable reasons for the possession or viewing of obscene materials other than those within the *298 three general categories specifically enumerated. In using the term, "other similar justification”, the Legislature does not lead a defendant down a blind alley where he cannot see or determine whether he has a right to propound an affirmative defense. Rather, by legislative indulgence, it opens another area in which a defendant in a particular case well might assert that the person or institution to whom he had disseminated obscene material was one whose possession of the material would be as legitimate and as socially desirable as those listed under the three enumerated categories. I do not find the phrase, "other similar justification”, when considered in this context as unconstitutionally vague.
It follows from the above that subdivision 1 of section 235.15 of the Penal Law does not violate the due process clause and therefore is not unconstitutional.
We now turn to the constitutional issue presented with respect to subdivision 2 of section 235.15 of the Penal Law which provides affirmative defenses to certain employees of motion picture theatres who are charged with violations of the obscenity laws. Although raised and argued below it is obvious that the court below did not consider this issue in arriving at its decision, but I feel it is proper that they be dealt with here.
Subdivision 2 of section 235.15 of the Penal Law provides as follows: "In any prosecution for obscenity, it is an affirmative defense that the person so charged was a motion picture projectionist, stage employee or spotlight operator, cashier, doorman, usher, candy stand attendant, porter or in any other non-managerial or non-supervisory capacity in a motion picture theatre; provided he has no financial interest, other than his employment, which employment does not encompass compensation based upon any proportion of the gross receipts, in the promotion of obscene material for sale, rental or exhibition or in the promotion, presentation or direction of any obscene performance, or is in any way responsible for acquiring obscene material for sale, rental or exhibition.”
It is obvious that in enacting the statute the Legislature provided a defense protection to certain nonmanagerial or nonsupervisory people employed by motion picture theatres while not providing the same protection to employees of, e.g., bookstores. Respondents contend that the Legislature in carving out a special defense for theatre employees without at the same time providing a similar defense for other "similarly situated” employees in other types of establishments violates *299 the equal protection clauses of the Federal and State Constitutions. (US Const, 14th Amdt, § 1; NY Const, art I, § 11.)
There can be no doubt that in this statute the Legislature has provided for two classes of individuals, one favored by the subject legislation, and the other not. The fact that the statute gives favorable treatment to one classification of persons while excluding others does not necessarily mean that it is unconstitutional. It has long been established that the equal protection clause does not forbid the States to treat different classes of persons in different ways. (Barbier v Connolly, 113 US 27.) However, legislative creation of a special class (as here, motion picture theatre employees) must be based upon a distinction separating that class from others, and the distinction must rest on some ground of difference having a fair and substantial relationship to the object of the legislation so that all persons similarly circumstanced shall be treated alike. (Reed v Reed, 404 US 71; Royster Guano Co. v Virginia, 253 US 412.) This is a test for the "reasonable basis” upon which a State may make a constitutional classification under the doctrine enunciated by the Supreme Court in Lindsley v National Carbonic Gas Co. (220 US 61, 78-79) as follows: "1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.”
We now must apply these principles to the matter before us. By its express terms subdivision 2 of section 235.15 of the Penal Law limits the affirmative defense to certain nonmanagerial and nonsupervisory employees of motion picture theatres. Respondents claim in effect that under the statute if such employees were to sell obscene reading material in the theatre the affirmative defense would be available to them, while it *300 would not be available to clerks in bookstores selling the same material. I do not read the statute that way. The purpose of a motion picture theatre is to display motion pictures to its patrons and not to sell books and magazines, which is the function of a bookstore. Therefore, I feel that a common-sense reading of the statute must lead to the conclusion that the defensive protection it provides is limited to the accessorial activities of said employees in the showing of motion pictures only. Thus, in my view, an employee selling obscene reading material in a movie theatre would not have the statutory defense available to him if prosecuted.
The basic question before us then is whether the Legislature in enacting subdivision 2 of section 235.15 of the Penal Law had a reasonable basis for providing the protection afforded the favored employees. The answer lies in whether there is a clear distinction between the showing of obscene motion pictures in a theatre and the selling, for example of, obscene reading material, and whether the distinction has a fair and substantial relationship to the object of the legislation (which is the prevention of commercial exploitation of obscenity). (Cf. Reed v Reed, 404 US 71, supra; Royster Guano Co. v Virginia, 253 US 412, supra.)
Respondents place great reliance on the decision of the Court of Appeals of Maryland in Wheeler v State (281 Md 593) in which the court struck as unconstitutional a statute which exempted certain employees in a "theatre which shows motion pictures” from the proscription of its obscenity statutes. I am, however, more persuaded by the dissent in that case in which the Chief Judge wrote as follows: "A theatre showing motion pictures may regulate who sees what is shown on the screen; the viewer has no means to disseminate the film beyond the confines of the theatre. In contrast, once printed matter is removed from a bookseller’s premises, it and its corrupting influence may be distributed and redistributed without limit to anyone, including juveniles. * * * The legislature could properly take into account the remote nature of the contact of the exempted theatre employees with the actual showing of an obscene film, and rationally conclude that the limited reach of the film did not justify seeking to prevent its exhibition by punishing employees having no direct responsibility for its showing.” (Wheeler v Maryland, supra, pp 611-612.)
I concur in this reasoning and apply it to subdivision 2 of section 235.15 of the Penal Law. When our Legislature estab *301 lished a classification of persons to be offered affirmative defenses in this statute, it well could have taken into consideration the unique distinction between obscene motion pictures and other obscene material. The Legislature further could have taken into consideration the remote nature of the contact of certain theatre employees with the showing of motion picture film as contrasted to the more direct nature of the contact of bookstore employees with the reading material sold therein. Surely, using this reasoning, the Legislature could have determined that the showing of obscene motion pictures is more restrictive and therefore less pernicious than the dissemination of other forms of obscenity, and the affording of defenses to the accessorial employees involved in said showing does not represent a departure from the object of our obscenity legislation.
To sum up, I believe that the reasonable basis test was met by the Legislature in enacting the subject legislation. Having established this it becomes immaterial whether I believe the statute is wisely conceived or that its operation may result in inequality. (Lindsley v National Carbonic Gas Co., 220 US 61, supra.) This statute, as are all statutes, is presumed to be constitutional, and this presumption can be overcome only by an explicit showing by the one attacking it that the classification drawn is invidiously discriminatory. (Cf. Lehnhausen v Lake Shore Auto Parts Co., 410 US 356.) Such a showing has not been made by respondents.
I must conclude then that the difference in treatment between motion picture theatre employees and other employees has a reasonable basis, and is not invidiously discriminatory. Subdivision 2 of section 235.15 of the Penal Law does not violate the equal protection clause and is not unconstitutional.
The order below is vacated and set aside and the case remanded to the City Court of Buffalo for further proceedings.

 The provisions of this section are similar to those found in subdivision (3) of section 251.4 of the Model Penal Code.