[Civ. No. 56911. Second Dist., Div. Three. Dec. 26, 1979.]

In re HARRY PRESLEY KIMBLER on Habeas Corpus.

COUNSEL

Brown, Weston & Sarno, Fleishman, Brown, Weston & Rohde, David M. Brown and G. Randall Garrou for Petitioner.

John K. Van de Kamp, District Attorney, Donald J. Kaplan, Dirk L. Hudson and George M. Palmer, Deputy District Attorneys, for Respondent.

OPINION

**POTTER, Acting P. J.**—This petition for a writ of habeas corpus involves the constitutionality of the provisions exempting nonmanagerial employees without financial interest in their place of employment from criminal liability for exhibition of obscene matter (Pen. Code, § 311.2,

subds. (c) and (d).)[1] Petitioner contends that section 311.2, as applied, impermissibly discriminates against other nonmanagerial employees, such as bookstore clerks with no financial interest in the bookstore, who distribute such obscene matter, thereby denying them equal protection of the law. We disagree.

Section 311.2 provides in pertinent part: "(a) Every person who knowingly sends or causes to be sent, or brings or causes to be brought, into this state for sale or distribution, or in this state possesses, prepares, publishes, or prints, with intent to distribute or to exhibit to others, or who offers to distribute, distributes, or exhibits to others, any obscene matter is guilty of a misdemeanor.

"   .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"(c) The provisions of this section with respect to the exhibition of, or the possession with intent to exhibit, any obscene matter shall not apply to a motion picture operator or projectionist who is employed by a person licensed by any city or county and who is acting within the scope of his employment, provided that such operator or projectionist has no financial interest in the place wherein he is so employed.

"(d) Except as otherwise provided in subdivision (c), the provisions of subdivision (a)...with respect to the exhibition of, or the possession with intent to exhibit, any obscene matter shall not apply to any person who is employed by a person licensed by any city or county and who is acting within the scope of his employment, provided that such employed person has no financial interest in the place wherein he is so employed and has no control, directly or indirectly, over the exhibition of the obscene matter."

Petitioner, a clerk in an "adult" bookstore, sold an obscene film[2] to an undercover police officer after answering the customer's questions concerning the content of the film. The municipal court judge rejected petitioner's alternative claims that: (1) subdivision (d) relieved bookstore clerks, such as himself, from criminal responsibility, or (2) if it did not, it denied him equal protection of the law.[3]

---

[1]Unless otherwise noted, all statutory references are to the Penal Code.

[2]Petitioner does not challenge the validity of the court finding that the film was in fact obscene.

[3]In this petition, petitioner challenges only the constitutionality of the limited reach of the exemption; he does not claim that subdivision (d) applies to him. Nor could such

Petitioner was convicted of the misdemeanor offense of selling an obscene film in violation of section 311.2, subdivision (a). Imposition of sentence was suspended and defendant was fined $630 and placed on summary probation for three years. Petitioner appealed, claiming that section 311.2 was unconstitutional as applied to him. The Appellate Department of the Los Angeles Superior Court affirmed his conviction, citing *People* v. *Kuhns* (1976) 61 Cal.App.3d 735 [132 Cal.Rptr. 725]. Following our denial of petitioner's writ of habeas corpus, our Supreme Court issued an order to show cause, returnable before this court, why the relief prayed for should not be granted.

### Discussion

In considering the contention that the limited scope of the exemption provisions of section 311.2 denies bookstore clerks, such as petitioner, equal protection of the law,[4] we must first determine the proper standard for reviewing the legislative classification. ■ "A requirement of strict judicial scrutiny is imposed when state action creates a 'suspect classification' or impinges on the exercise of a fundamental right, and the state must justify its action by showing the classification is necessary to further a compelling state interest. In other cases the traditional test is applicable, requiring only that the state show a rational relationship between the classification and some conceivably legitimate state purpose." (*Adams* v. *Superior Court* (1974) 12 Cal.3d 55, 60-61 [115 Cal.Rptr. 247, 524 P.2d 375].)

■ The appropriate standard here is the rational basis test since the statute creating both the liability and the exemptions relates only to ob-

---

a claim be supported. Section 311 specifically distinguishes between exhibition and distribution of obscene matter, defining the former as "show[ing]" (§ 311, subd. (f)) and the latter as "transfer[ring] possession of, whether with or without consideration" (§ 311, subd. (d)). Both subdivisions (c) and (d) of section 311.2 expressly limit exemption from criminal liability to "the exhibition of, or the possession with intent to exhibit, any obscene matter." Petitioner was convicted of the sale—i.e., the distribution —of an obscene film, not the exhibition of such a film.

[4]Insofar as petitioner claims (in a brief title only) that he was denied equal protection of the law in violation of both federal (U.S. Const., Amend. XIV) and state Constitutions (Cal. Const., art. I, § 7; art. IV, § 16, subd. (a)), we note that "the test for determining the validity of a statute where a claim is made that it unlawfully discriminates against any class is substantially the same under the state prohibitions against special legislation and the equal protection clause of the federal Constitution." (*County of L.A.* v. *Southern Cal. Tel. Co.* (1948) 32 Cal.2d 378, 389 [196 P.2d 773]; see also *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 596, fn. 11 [96 Cal.Rptr. 601, 487 P.2d 1241]; *McGlothlen* v. *Department of Motor Vehicles* (1977) 71 Cal.App.3d 1005, 1025 [140 Cal.Rptr. 168].)

scene matter. While the courts of sister states have disagreed over the constitutionality of somewhat similar exemptions in their obscenity statutes, they have uniformly applied the rational basis test. (See, e.g., *State* v. *Johnson* (La. 1977) 343 So.2d 705, 708; *Wheeler* v. *State* (1977) 281 Md. 593 [380 A.2d 1052, 1058]; *Com.* v. *Bono* (1979) — Mass.App. — [384 N.E.2d 1260, 1262]; *People* v. *Illardo* (1978) 97 Misc.2d 294 [411 N.Y.S.2d 142, 145]; *People* v. *Victoria* (1978) 96 Misc.2d 926 [409 N.Y.S.2d 937, 938]; *State* v. *Burgun* (1976) 49 Ohio App.2d 112 [359 N.E.2d 1018, 1019, 1026-1027]; *State* v. *J-R Distributors, Inc.* (1973) 82 Wn.2d 584 [512 P.2d 1049, 1061]; cf. *People* v. *Milano* (1979) 89 Cal.App.3d 153, 166 [152 Cal.Rptr. 318] [rational basis standard for exemption for news media from prosecution for disseminating gambling information].)

As was explained in *Wheeler* v. *State, supra,* 380 A.2d at page 1058, upon which petitioner relies, this kind of statute "involves neither a suspect class nor a fundamental right. Uncertain as other matters with regard to obscenity may be, the Supreme Court has categorically settled that obscene material is unprotected by the First Amendment. (*Miller* v. *California,* 413 U.S. 15, 23, 93 S.Ct. 2607, 37 L.Ed.2d 419, *reh. denied,* 414 U.S. 881, 94 S.Ct. 26, 38 L.Ed.2d 128 (1973). Thus, the reasonable basis test is applicable."

■ Under the rational basis standard: "The Legislature is presumed to have acted constitutionally, and statutory classifications may be set aside only if no ground can be conceived to justify them, and they are wholly irrelevant to the achievement of the state's objective. (*McDonald* v. *Board of Election* (1969) 394 U.S. 802, 809 [22 L.Ed.2d 739, 745-746, 89 S.Ct. 1404]; *McGowan* v. *Maryland* (1961) 366 U.S. 420, 425-426 [6 L.Ed.2d 393, 398-399, 81 S.Ct. 1101].)" (*Adams* v. *Superior Court, supra,* 12 Cal.3d at p. 62.)

"A legislative classification may satisfy the traditional equal protection test without being the most precise possible means of accomplishing its legislative purpose. Only a reasonable relationship to that purpose is required." (*Weber* v. *City Council* (1973) 9 Cal.3d 950, 965 [109 Cal.Rptr. 553, 513 P.2d 601].)

Furthermore, "the burden of demonstrating the invalidity of a classification under this standard rests squarely upon *the party who assails it.*" (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 17 [112 Cal.Rptr. 786, 520 P.2d 10].) (Italics in original.)

■ As the California Supreme Court explained in *Estate of Horman* (1971) 5 Cal.3d 62, 75 [95 Cal.Rptr. 433, 485 P.2d 785]: "There is no constitutional requirement of uniform treatment.... 'Wide discretion is vested in the Legislature in making the classification and every presumption is in favor of the validity of the statute; the decision of the Legislature as to what is a sufficient distinction to warrant the classification will not be overthrown by the courts unless it is palpably arbitrary.... [Citations.] A distinction in legislation is not arbitrary if any set of facts reasonably can be conceived that would sustain it.'"

Similarly, the United States Supreme Court in *Ohio Bureau of Employment Services* v. *Hodory* (1977) 431 U.S. 471 [52 L.Ed.2d 513, 97 S.Ct. 1898], recently reiterated the standard for examining a state classification under the rational basis test: "'This inquiry employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary. *Dandridge* v. *Williams*, [397 U.S. 471,] 485 [(1970)]. Such action by a legislature is presumed to be valid.' *Id.*, at 314." (431 U.S. at p. 489 [52 L.Ed.2d at p. 527].)

"'If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U.S. 61, 78.' *Dandridge* v. *Williams*, 397 U.S. at 485." (431 U.S. at p. 491 [52 L.Ed.2d at p. 528].)

Consistent with the application of this standard, California appellate courts have recognized the validity of the exemption classification in section 311.2. *People* v. *Kuhns* (1976) 61 Cal.App.3d 735, 760 [132 Cal.Rptr. 725], upheld the validity of the distinction between exhibition and distribution against an equal protection challenge by a bookstore clerk, stating it was "a proper exercise of the Legislature's right to classify regulatory statutes." Moreover, prior to the passage of the provision exempting all nonmanagerial employees without financial interest who exhibit obscene matter (now § 311.2, subd. (d)), the appellate courts in *People* v. *Haskin* (1976) 55 Cal.App.3d 231, 240-241 [127 Cal.Rptr. 426], and *Gould* v. *People* (1976) 56 Cal.App.3d 909, 919-920 [128 Cal.Rptr. 743], upheld the validity of the motion picture projectionist's exemption (now § 311.2, subd. (c)) against a claim of denial of equal

protection. As the court said in *Haskin* (55 Cal.App.3d at p. 240): "Defendants' argument that the statute should exempt others (as: a bookstore clerk, . . .) falls upon deaf ears, for a regulatory statute need not cover the whole of a permissible field and, recognizing degrees of evil, may deal only with the more important exemptions from such evils [citations]."

We see no reason to disagree with the result in *Kuhns*. The legislative classification at issue distinguishes between two classes of employees on the basis of their conduct, not their occupation. The Supreme Courts of the United States and California have held that the state has a legitimate interest in regulating the commercial distribution of obscenity. (*Paris Adult Theatre I* v. *Slaton* (1973) 413 U.S. 49, 57-63 [37 L.Ed.2d 446, 456-460, 93 S.Ct. 2628]; *Bloom* v. *Municipal Court* (1976) 16 Cal.3d 71, 82 [127 Cal.Rptr. 317, 545 P.2d 229].) ■ The obvious purpose of section 311.2 is to deter the commercial dissemination of obscene matter. In light of this legitimate purpose, we cannot say that a legislative classification distinguishing between the exhibition and distribution of such obscene matter by nonmanagerial employees is "palpably arbitrary" and without any rational basis.

Petitioner points to the decision of the court of appeals in *Wheeler* v. *State, supra,* 380 A.2d 1052, in which the Maryland court reversed the conviction of a bookstore clerk for distribution of an obscene magazine, striking as unconstitutional a statute which exempted nonmanagerial employees in a "'theatre which shows motion pictures'" (*id.,* at p. 1054) from the proscription of the obscenity statutes. We, however, are more persuaded by the dissent than the majority in that case.

Initially, we note that there is a crucial distinction between our statutory exemptions and the Maryland exemptions, as construed by the majority in *Wheeler*. The *Wheeler* court construed their provision as exempting all theatre employees regardless of whether they distributed or exhibited obscene matter. In holding that the exemption denied equal protection to bookstore clerks, the court pointed out (380 A.2d at p. 1059): "[T]he statute cannot be read so that the exemption pertains only to the showing of motion pictures as such. Thus, an usher in the exempted class who distributes to the theatre patrons a program concerning the film being shown, which program itself constituted obscene matter, would not be subject to the prohibitions of § 418. The bookstore

employee, however, or any other person not within the exempted class, who distributed that same program, would be subject to punishment for violation of the statute. Thus, the law operates on some persons and not upon others like situated or circumstanced."

In contrast, subdivisions (c) and (d) of section 311.2 expressly limit the exemption from prosecution to those employees engaging in activities "with respect to the exhibition of, or the possession with intent to exhibit, any obscene matter." Under our statute, a theatre usher distributing an obscene film or program to a customer, with or without consideration, is subject to the same criminal prosecution as a bookstore clerk, like petitioner. It is the employee's conduct, not the particular place where he works, that determines criminal liability.

Moreover, we agree with the dissent in *Wheeler* that there is a rational basis for such a distinction. As Chief Judge Murphy stated (380 A.2d at p. 1063): "A theatre showing motion pictures may regulate who sees what is shown on the screen; the viewer has no means to disseminate the film beyond the confines of the theatre. In contrast, once [obscene] matter is removed from a bookseller's premises, it and its corrupting influence may be distributed and redistributed without limit to anyone, including juveniles. . . . The legislature could properly take into account the remote nature of the contact of the exempted theatre employees with the actual showing of an obscene film, and rationally conclude that the limited reach of the film did not justify seeking to prevent its exhibition by punishing employees having no direct responsibility for its showing."

In *People v. Illardo, supra,* 97 Misc.2d 294 [411 N.Y.S.2d 142, 145-146], a New York court upheld the constitutionality of a similar statute after first construing it to exempt only the exhibition, not the distribution, of obscene matter by theatre employees. The court cited as persuasive the above quoted reasoning of the dissent in *Wheeler v. State, supra,* 380 A.2d at page 1063, and held that there was a clear distinction between the showing of obscene motion pictures in a theatre and the selling of obscene matter which had a fair and substantial relationship to the legislation's purpose to prevent commercial exploitation of obscenity.

In another New York case, *People v. Victoria, supra,* 96 Misc.2d 926 [409 N.Y.S.2d 937], as here, a nonmanagerial bookstore employee was

charged with the sale of an obscene film. That court also upheld the constitutionality of the New York statutory classification against an equal protection challenge. The *Victoria* court stressed that the distinction between the "function and impact" of a projectionist and a bookstore cashier provided the reasonable basis for the statutory distinction. In contrast to a projectionist, the bookstore cashier "is readily available to the public and further, permits the material that he has to sell to be taken by the purchaser to leave the store and to carry with it an unchecked wide dissemination of the material involved." (*Id.*, at p. 938.) The court pointed out that the statutory distinction was both "rational and...well planned in the state's legitimate interest in curbing the flow of obscenity throughout the state" since it imposed "criminal liability on only those persons truly responsible for the dissemination to the public at large...." (*Ibid.*)

In like fashion, the Supreme Court of Washington in *State v. J-R Distributors, Inc., supra,* 82 Wn.2d 584 [512 P.2d 1049, 1061-1062], sustained the constitutionality of its statute exempting from prosecution motion picture projectionists without financial interest or control. As an example of a valid reason for the legislative classification, the Washington Supreme Court pointed out that there is a rational distinction between projectionists and bookstore clerks with respect to their participation in the selection of the obscene matter to be disseminated. While a projectionist merely exhibits the particular reels that previously have been selected by the manager, the bookstore clerk may influence the choice of which of the wide range of materials in the store will be purchased. In the case at bench, though the customer originally picked out the film, he only bought it after first receiving the petitioner's appraisal of its merits.

The California Legislature could reasonably have concluded that the distinction between the impact of a transient exhibition of an obscene film and its distribution in permanent form, with the potential for unlimited redistribution even to juveniles, warranted restricting exemption from prosecution to those nonmanagerial employees who exhibit obscene matter. In making that classification, the Legislature could also reasonably have considered the different function of the two classes of employees with respect to their potential influence over the selection of obscene matter to be disseminated. It is immaterial whether we believe the legislative classification is wisely conceived or whether its operation may result in some inequality. (See *Ohio Bureau of Employment*

*Services* v. *Hodory, supra,* 431 U.S. at pp. 489, 491 [52 L.Ed.2d at pp. 527, 528].) Since petitioner has failed to show that the classification is palpably arbitrary, we must sustain it. (*Adams* v. *Superior Court, supra,* 12 Cal.3d at p. 62; *D'Amico* v. *Board of Medical Examiners, supra,* 11 Cal.3d at p. 17; *Estate of Horman, supra,* 5 Cal.3d at p. 75.) We, therefore, hold that subdivisions (c) and (d) of section 311.2 do not violate the equal protection provisions of the United States or California Constitutions. Accordingly, the petition for writ of habeas corpus will be denied.

### Disposition

The petition for writ of habeas corpus is denied.

Cobey, J., and Allport, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied February 20, 1980. Mosk, J., and Newman, J., were of the opinion that the application should be granted.