(711 P.2d 759)

No. 57,645

STATE OF KANSAS, *Appellee,* v. RICKY B. BAKER, *Appellant.*

Opinion filed December 12, 1985.

*Patrick R. Butler,* of the American Civil Liberties Union, of Wichita, for the appellant.

*Geary N. Gorup,* assistant district attorney, *Clark V. Owens,* district attorney, and *Robert T. Stephan,* attorney general, for the appellee.

Before REES, P.J., BRISCOE, J., and WILLIAM D. CLEMENT, District Judge, assigned.

BRISCOE, J.: Defendant Ricky B. Baker appeals his conviction of two counts of promoting obscenity in violation of K.S.A. 21-4301. Defendant challenges the constitutionality of K.S.A. 21-4301, and also contends his prosecution violates the public policy codified by the statute.

Defendant was employed as a clerk in Plato's, an adult bookstore in Wichita, Kansas. The bookstore sells books, magazines, sexual devices, and lingerie, and has small booths for showing

films. Defendant had been employed as a clerk at Plato's for only nineteen days prior to the sales which led to his arrest.

Defendant was arrested and charged after two Wichita police officers each entered Plato's, on two separate occasions, and purchased a magazine from the defendant. Prior to purchase, the magazines had been sealed in clear plastic and stapled to the wall of the store. Defendant concedes the magazines in question are obscene.

Defendant contends K.S.A. 21-4301(4) violates the equal protection clause of the Fourteenth Amendment by creating a distinction between theater projectionists and similar employees such as bookstore clerks. The statute excludes theater projectionists from prosecution for promoting obscenity in most instances.

Promoting obscenity is prohibited by K.S.A. 21-4301 and includes both the sale of obscene magazines and the showing of obscene motion pictures. Subsection (4), however, provides the following exception for theater projectionists:

"The provisions of this section and the provisions of ordinances of any city prescribing a criminal penalty for exhibit of any obscene motion picture shown in a commercial showing to the general public shall not apply to a projectionist, or assistant projectionist, if such projectionist or assistant projectionist has no financial interest in the show or in its place of presentation other than regular employment as a projectionist or assistant projectionist. The provisions of this section shall not exempt any projectionist or assistant projectionist from criminal liability for any act unrelated to projection of motion pictures in commercial showings to the general public."

When the constitutionality of a statute is challenged, the statute comes before the court cloaked in a presumption of constitutionality. *State ex rel. Schneider v. Liggett,* 223 Kan. 610, 616, 576 P.2d 221 (1978). All doubts must be resolved in favor of its validity and, before a statute may be stricken down, it must clearly appear the statute violates the constitution. *State v. Compton,* 233 Kan. 690, 697, 664 P.2d 1370 (1983), citing *Leek v. Theis,* 217 Kan. 784, 539 P.2d 304 (1975). The burden of proof as to the validity of the statute falls on the one attacking the statute. *Gumbhir v. Kansas State Board of Pharmacy,* 231 Kan. 507, 519, 646 P.2d 1078 (1982), *cert. denied* 459 U.S. 1103 (1983).

Traditionally, the yardstick for measuring equal protection arguments has been the "reasonable basis" test. This standard was set forth in *McGowan v. Maryland,* 366 U.S. 420, 425-26, 6 L.Ed.2d 393, 81 S.Ct. 1101 (1961):

"The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it."

In *Dandridge v. Williams*, 397 U.S. 471, 485, 25 L.Ed.2d 491, 90 S.Ct. 1153, *reh. denied* 398 U.S. 914 (1970), it was stated:

"If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' "

A more stringent standard is applied, however, in cases involving either a suspect class or a fundamental interest. Under this standard, the burden is placed on the State to demonstrate that the classification is necessary to accomplish a compelling state interest.

In the present case, the appropriate standard for review is the "reasonable basis" test. The statutory classification does not involve a suspect class, *e.g.*, race or alienage, nor does it interfere with any fundamental right. Obscenity is not protected by the First Amendment. *Miller v. California*, 413 U.S. 15, 23, 37 L.Ed.2d 419, 93 S.Ct. 2607 (1973). The application of the "reasonable basis" standard is consistent with those jurisdictions addressing similar statutes. See, *e.g.*, *State v. Johnson*, 343 So. 2d 705 (La. 1977); *Wheeler v. State*, 281 Md. 593, 380 A.2d 1052 (1977), *cert. denied* 435 U.S. 997 (1978); *Commonwealth v. Bono*, 7 Mass. App. 849, 384 N.E.2d 1260, *rev. denied* 377 Mass. 919 (1979); *People v. Illardo*, 97 Misc. 2d 294, 411 N.Y.S.2d 142 (1978), *aff'd* 48 N.Y.2d 408, 423 N.Y.S.2d 470 (1979); *State v. Burgun*, 49 Ohio App. 2d 112, 359 N.E.2d 1018 (1976); *State v. J-R Distributors, Inc.*, 82 Wash. 2d 584, 512 P.2d 1049 (1973).

In applying the "reasonable basis" standard, the Kansas Supreme Court has stated:

"A state statute may single out a class of persons for distinctive treatment only if the classification bears a rational relation to the purpose of the legislation and if persons similarly situated with respect to the legitimate purpose of the law receive like treatment." *State v. Freeman*, 223 Kan. 362, Syl. ¶ 4, 574 P.2d 950 (1978).

The United States Supreme Court has held the "reasonable basis" test "employs a relatively relaxed standard reflecting the

Court's awareness that the drawing of lines that create distinc-‐ tions is peculiarly a legislative task . . . ." *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 314, 49 L.Ed.2d 520, 96 S.Ct. 2562 (1976).

In contesting the constitutionality of the present statute, the defendant argues that movie projectionists and bookstore clerks are similarly situated and no reasonable basis can be found to distinguish the two. The defendant relies on two cases from other jurisdictions where similar statutes were held unconstitutional. *Wheeler v. State*, 281 Md. 593; *Pack v. Cleveland*, 1 Ohio St. 3d 129, 438 N.E.2d 434 (1982).

The State responds that the distinction between projectionists and clerks may be reasonably based on any one of several legislative goals. In support, the State notes that five sister states have upheld similar statutes. *In re Kimbler*, 100 Cal. App. 3d 453, 161 Cal. Rptr. 53 (1979); *Commonwealth v. Bono*, 7 Mass. App. 849; *People v. Illardo*, 48 N.Y.2d 408, 423 N.Y.S.2d 470 (1979); *State v. Lesieure*, 121 R.I. 859, 404 A.2d 457 (1979); *State v. J-R Distributors, Inc.*, 82 Wash. 2d 584.

The State advances a number of bases for the statutory distinction drawn between movie projectionists and bookstore clerks which we find persuasive. The State points out that the distinction may be premised on the ability to further distribute printed material. A person who views a motion picture has no means to further disseminate the film beyond the theater, while printed material, once it leaves the store, may be redistributed without limit. This distinction was relied upon in *In re Kimbler*, 100 Cal. App. 3d. 453, and *People v. Illardo*, 97 Misc. 2d 294.

Additional bases for the distinction which have been cited by other jurisdictions are: (1) the potential chilling effect the prosecution of projectionists may have on the showing of constitutionally protected films; (2) the fact that bookstore clerks may influence the customer's choice as to a wide range of materials, while a projectionist must show whatever film has been selected by management; and (3) projectionists, by nature of their work, have less of an opportunity to determine whether a film is obscene than does a bookstore clerk in determining whether a magazine is obscene.

As to each of these arguments, the defendant contends the suggested legislative concern is just as applicable to bookstore

clerks. The defendant finds support in two cases from other jurisdictions where courts have found bookstore clerks and movie projectionists to be similarly situated under each of these arguments, and therefore any distinction is unreasonable and offends the equal protection clause. *Wheeler v. State*, 281 Md. 593; *Pack v. Cleveland*, 1 Ohio St. 3d 129. The *Wheeler* case may be distinguished from the present case, however, as Maryland's statutory exemption applied to all theater employees, not just projectionists. This fact appears to have been of some importance to the Maryland court's decision.

The only remaining argument advanced by the State is that movie projectionists are assigned by the union to a particular theater and as such are not voluntary employees. This difference, in fact, was the basis of the trial court's decision in this case. Only the Supreme Court of Ohio has rejected this argument. According to that court, "[t]he continuance, or maintenance, of the existing contract arrangements between the projectionists' union and the various theaters does not rise to the status of a legitimate state interest." *Pack v. Cleveland*, 1 Ohio St. 3d at 133.

Although we are confronted in this case with persuasive authority to support either result, the established principles for reviewing challenges to the constitutionality of statutes generally, and equal protection issues specifically, compel us to uphold the statutory distinction between projectionists and clerks. The numerous bases for the statutory distinction identified by sister states in their review of similar statutes are sufficient to uphold the statute under the "reasonable basis" test set forth in *McGowan v. Maryland*, 366 U.S. 420.

Defendant's remaining issues were not raised before the trial court. As a general rule, issues asserted for the first time on appeal are improper for appellate review. *State v. Kelly*, 204 Kan. 715, 716, 466 P.2d 350 (1970). However, if a newly asserted issue involves only a legal question arising on proved or admitted facts which will be finally determinative of the case, or if consideration is necessary to serve ends of justice or to prevent a denial of fundamental rights, an appellate court may consider the issue even though not considered by the trial court. *Pierce v. Board of County Commissioners*, 200 Kan. 74, 80-81, 434 P.2d 858 (1967). We will address defendant's remaining issues because they arguably fall within these exceptions to the general rule.

Defendant contends K.S.A. 21-4301 violates the due process clause of the Fourteenth Amendment because the statute's definition of obscenity is vague and overbroad. While defendant's complaints regarding vagueness and overbreadth are closely related, the concepts are distinct. A statute that is vague leaves the ordinary person to guess at its meaning and as to whether any particular conduct is criminal or not. *State v. Huffman*, 228 Kan. 186, 192, 612 P.2d 630 (1980). A statute which is overbroad makes conduct criminal which is constitutionally protected. *State v. Allen & Rosebaugh*, 1 Kan. App. 2d 32, 41, 562 P.2d 445 (1977).

K.S.A. 21-4301 defines "obscenity" in subsection (2)(a):

"Any material or performance is 'obscene' if the average person applying contemporary community standards would find that such material or performance, taken as a whole, appeals to the prurient interest; that the material or performance has patently offensive representations or descriptions of ultimate sexual acts, normal or perverted; and that the material or performance, taken as a whole, lacks serious literary, educational, artistic, political or scientific value."

Defendant contends K.S.A. 21-4301 is so vague that an individual is unable to determine whether or not a specific item is obscene. He contends the statute is overbroad because, although K.S.A. 21-4301 states that *any* portrayal of an ultimate sexual act is potentially a violation of the law depending upon the community· definition of obscenity, not all ultimate sexual acts are obscene under community standards. Defendant cites the district attorney's guidelines promulgated to assist law enforcement officers as *the* community definition of obscenity. Defendant argues that, since the district attorney provides a narrower definition of obscenity, the statute is too broad. This argument fails to distinguish between materials which are obscene under the statute and those materials the district attorney believes, in the exercise of his discretion as a prosecutor, are susceptible to effective prosecution.

We find no merit in either of the defendant's due process arguments. The legislature is not precluded from regulating obscenity because the term cannot be precisely or uniformly defined. In fact, the United States Supreme Court has held language similar to that found in K.S.A. 21-4301 to be sufficient to overcome both arguments, as long as the statute incorporates the standards set out by the court in *Miller v. California*, 413 U.S. 15. *Ward v. Illinois*, 431 U.S. 767, 52 L.Ed.2d 738, 97 S.Ct.

2085 (1977). By expressly incorporating the *Miller* standards in K.S.A. 21-4301, the legislature has sounded the death knell on defendant's due process arguments.

Defendant contends K.S.A. 21-4301 constitutes an invalid exercise of police power in violation of the First and Fourteenth Amendments. He argues that the State's power to regulate obscenity has been limited to situations involving children or unwilling adults. This argument is based on the United States Supreme Court's holding that the states cannot interfere with the private possession of obscenity (*Stanley v. Georgia*, 394 U.S. 557, 22 L.Ed.2d 542, 89 S.Ct. 1243 [1969]), and a statement by the court "that the States have a legitimate interest in prohibiting dissemination or exhibition of obscene material when the mode of dissemination carries with it a significant danger of offending the sensibilities of unwilling recipients or of exposure to juveniles." *Miller v. California*, 413 U.S. at 18-19. By reading the holding in *Stanley* with the statement in *Miller*, the defendant suggests that the states have no legitimate interest in regulating the dissemination of obscenity between consenting adults.

This theory has been specifically rejected by the United States Supreme Court:

"We categorically disapprove the theory . . . that obscene, pornographic films acquire constitutional immunity from state regulation simply because they are exhibited for consenting adults only. . . . Although we have often pointedly recognized the high importance of the state interest in regulating the exposure of obscene materials to juveniles and unconsenting adults [citations omitted], this Court has never declared these to be the only legitimate state interests permitting regulation of obscene material. The States have a long-recognized legitimate interest in regulating the use of obscene material in local commerce and in all places of public accommodation, as long as these regulations do not run afoul of specific constitutional prohibitions. [Citations omitted.]" *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 57, 37 L.Ed.2d 446, 93 S.Ct. 2528 (1973).

See also *United States v. Orito*, 413 U.S. 139, 37 L.Ed.2d 513, 93 S.Ct. 2674 (1973); *United States v. 12 200-Ft. Reels of Film*, 413 U.S. 123, 37 L.Ed.2d 500, 93 S.Ct. 2665 (1973); *Kaplan v. California*, 413 U.S. 115, 37 L.Ed.2d 492, 93 S.Ct. 2680 (1973).

As his final issue, defendant contends his prosecution pursuant to K.S.A. 21-4301 violated public policy. This statute, according to the defendant, codifies the public policy "that certain types of pornography should be made illegal." The thrust of defendant's argument is that the public policy the statute codifies is violated when an economically desperate employee is

prosecuted while the profit-making owners, the "real" violators, are not.

We are not at liberty to declare a statute invalid merely because it may be unfair, or may, by its application, create a hardship. See *McGowan v. Maryland*, 366 U.S. at 425-26; *State ex rel. Schneider v. Liggett*, 223 Kan. at 619-20; *McAllister v. Fair*, 72 Kan. 533, 84 Pac. 112 (1906). The only test of the validity of an act regularly passed by a state legislature is whether it directly violates any of the express or implied restrictions of the state or federal constitutions. *Westover v. Schaffer*, 205 Kan. 62, 65, 468 P.2d 251 (1970); *Schaake v. Dolley*, 85 Kan. 598, 602, 118 Pac. 80 (1911). The prosecution of one participant in a crime, while another may go free, does not make the underlying criminal statute invalid or its application in that instance a violation of public policy. K.S.A. 21-3205(3). In fact, defendant's prosecution advances the public policy he has defined.

Affirmed.