(83 P.3d 229)

No. 85,898

STATE OF KANSAS, *Appellee*, v. MATTHEW R. LIMON, *Appellant.*

Opinion filed January 30, 2004.

*Tamara Lange*, of American Civil Liberties Union Foundation, Lesbian & Gay Rights Project, of San Francisco, California, *James D. Esseks*, of American Civil Liberties Union Foundation, Lesbian & Gay Rights Project, of New York, New York, and *Paige A. Nichols*, of Lawrence, for appellant.

*Jared S. Maag*, assistant attorney general, and *Phill Kline*, attorney general, for appellee.

*Jeffrey E. Goering*, of Thompson Stout & Goering, LLC, of Wichita, and *Matthew D. Staver*, of Liberty Counsel, of Longwood, Florida, for *amicus curiae* Kansas Legislators.

*Timothy M. O'Brien* and *Chelsi K. Hayden*, of Shook, Hardy & Bacon, L.L.F., of Overland Park, and *Julie M. Carpenter* and *Nicole G. Berner*, of Jenner & Block, LLC, of Washington, D.C., for *amicus curiae* DKT Liberty Project.

Before PIERRON, P.J., GREEN and MALONE, JJ.

GREEN, J.: Matthew R. Limon was convicted of criminal sodomy, a severity level 3 person felony, in violation of K.S.A. 21-3505(a)(2). He was sentenced to 206 months' imprisonment and 60 months' supervised release. Limon argued that K.S.A. 2002 Supp. 21-3522(a)(2) was unconstitutional because it impermissibly discriminated between heterosexual and homosexual sodomy. Li-

mon maintained that the classification limiting the applicability of K.S.A. 2002 Supp. 21-3522 to "members of the opposite sex" violated his right to equal protection because it criminalized heterosexual sodomy less severely than homosexual sodomy.

Limon appealed to this court. Relying primarily upon *Bowers v. Hardwick*, 478 U.S. 186, 92 L. Ed. 2d 140, 106 S. Ct. 2841 (1986), which refused to confer a fundamental right to engage in homosexual conduct, this court affirmed Limon's conviction. *State v. Limon*, Case No. 85,898, unpublished opinion filed February 1, 2002 (*Limon I*).

Our Supreme Court denied Limon's petition for review. See 274 Kan. 1116. Limon then filed a petition for writ of certiorari with the United States Supreme Court. The Court deferred its ruling until the decision in *Lawrence v. Texas*, 539 U.S. 558, 156 L. Ed. 2d 508, 123 S. Ct. 2472 (2003), was filed on June 26, 2003. The next day, the Court granted the petition for writ of certiorari, vacated the judgment, and "remanded to the Court of Appeals of Kansas for further consideration in light of *Lawrence*." *Limon v. Kansas*, 539 U.S. 955 (2003).

Because the challenged classification has a rational basis, we affirm. In addition, as to Limon's contention that K.S.A. 2002 Supp. 21-3522 impermissibly discriminates on the basis of gender, we disagree and affirm.

Limon, an 18-year-old male adult, and M.A.R., a 14-year-old boy, both resided at a school for the developmentally disabled. M.A.R. told police that Limon had performed one instance of oral sex on him. M.A.R. further told the police that Limon performed oral sex on him until he asked Limon to stop.

Limon was later charged with criminal sodomy under K.S.A. 21-3505(a)(2). Limon moved to dismiss the complaint, arguing that he should have been charged with unlawful voluntary sexual relations under K.S.A. 2002 Supp. 21-3522. He further argued that because he could not be charged under K.S.A. 2002 Supp. 21-3522, as it applied only to heterosexual sex, this statute violated his right to equal protection.

The trial court rejected Limon's equal protection arguments. Limon was tried before the trial court based on stipulated facts.

The trial court convicted Limon based on those stipulated facts. Because of Limon's prior two adjudications for aggravated criminal sodomy, the trial court sentenced Limon to 206 months' imprisonment.

*Constitutionality and Construction of Statutes*

It is a basic rule that every reasonable construction must be applied to save a statute from unconstitutionality. *Rust v. Sullivan,* 500 U.S. 173, 190, 114 L. Ed. 2d 233, 111 S. Ct. 1759 (1991), and *NLRB v. Catholic Bishop of Chicago,* 440 U.S. 490, 500, 59 L. Ed. 2d 533, 99 S. Ct. 1313 (1979). "When the constitutionality of a statute is challenged, the statute comes before the court cloaked in a presumption of constitutionality." *State v. Baker,* 11 Kan. App. 2d 4, 6, 711 P.2d 759 (1985), *rev. denied* 238 Kan. 878 (1986) (citing *State ex rel. Schneider v. Liggett,* 223 Kan. 610, 616, 576 P.2d 221 [1978]). "Before a statute may be stricken down, it must clearly appear the statute violates the Constitution. Moreover, it is the court's duty to uphold the statute under attack, if possible, rather than defeat it, and, if there is any reasonable way to construe the statute as constitutionally valid, that should be done." *Bair v. Peck,* 248 Kan. 824, Syl. ¶ 1, 811 P.2d 1176 (1991).

Limon first contends that because gay teenagers are excluded from the protection of K.S.A. 2002 Supp. 21-3522, the statute violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Although the Equal Protection Clause guarantees equality before the law, *Norvell v. Illinois,* 373 U.S. 420, 423, 10 L. Ed. 2d 456, 83 S. Ct. 1366 (1963), it does not require the law to treat all persons exactly alike. *Tigner v. Texas,* 310 U.S. 141, 147, 84 L. Ed. 1124, 60 S. Ct. 879 (1940).

Statutes by necessity are directed to less than universal situations. *Morey v. Doud,* 354 U.S. 457, 472, 1 L. Ed. 2d 1485, 77 S. Ct. 1344 (1957) (Frankfurter, J., dissenting), *overruled by New Orleans v. Dukes,* 427 U.S. 297, 49 L. Ed. 2d 511, 96 S. Ct. 2513 (1976). If this were not so, statutes would be ineffective because they would fail to take into account factual differences. See *Morey,* 354 U.S. at 472 (Frankfurter, J., dissenting). As a result, a mere showing that different persons or classes are treated differently is

not sufficient to establish an equal protection violation. *Griffin v. School Board,* 377 U.S. 218, 230, 12 L. Ed. 2d 256, 84 S. Ct. 1226 (1964).

Moreover, legislatures are presumed to have acted within their constitutional power in making a classification. Chief Justice Warren, speaking for a unanimous Court in rejecting the claim that the exemptions in a Maryland law violated equal protection, stated: "State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. [Citations omitted.]" *McGowan v. Maryland,* 366 U.S. 420, 425-26, 6 L. Ed. 2d 393, 81 S. Ct. 1101 (1961).

In implying that it is irrelevant whether the legislature could have enacted a better law under a rational basis review, the United States Supreme Court declared:

"[E]qual protection analysis 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.' *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313 (1993). See also, *e.g., Dandridge v. Williams,* 397 U.S. 471, 486 (1970). Nor does it authorize 'the judiciary [to] sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines.' *New Orleans v. Dukes,* 427 U.S. 297, 303 (1976) *(per curiam).* For these reasons, a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a *strong presumption of validity.* [Citations omitted.] Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose. See, *e.g., Nordlinger v. Hahn,* 505 U.S. 1, 11 (1992); *Dukes, supra,* at 303. Further, a legislature that creates these categories need not 'actually articulate at any time the purpose or rationale supporting its classification.' [Citations omitted.] Instead, a classification 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.' [Citations omitted.]" (Emphasis added.) *Heller v. Doe,* 509 U.S. 312, 319-320, 125 L. Ed. 2d 257, 113 S. Ct. 2637 (1993).

Similarly, our Supreme Court, in determining the appropriate level of scrutiny to apply in an equal protection claim, stated: "[I]t appears that the legislature's purpose in creating the classification need not be established. The classification must, however, bear a rational relationship to a legitimate objective." *Stephenson v. Sugar*

*Creek Packing*, 250 Kan. 768, 774, 830 P.2d 41 (1992). As a result, the question to be answered is whether the challenged classification has a rational basis. If the answer is yes, our inquiry is over.

### Lawrence v. Texas

Limon relies on the recent United States Supreme Court decision in *Lawrence v. Texas*, 539 U.S. 558, 156 L. Ed. 2d 508, in support of his equal protection claim. Nevertheless, *Lawrence* is factually and legally distinguishable from the present case. In explaining that homosexual acts, illegal under Texas law, are protected by the Fourteenth Amendment's Due Process Clause of the United States Constitution, Justice Kennedy stated:

"The case does involve two adults who, with full and mutual consent from each other, engaged in sexual practices common to a homosexual lifestyle. The petitioners are entitled to respect for their private lives. The State cannot demean their existence or control their destiny by making their private sexual conduct a crime. Their right to liberty under the Due Process Clause gives them the full right to engage in their conduct without intervention of the government." 539 U.S. at 578.

From this language, the major premise that underlies the *Lawrence* holding is clearly apparent:

No state may prohibit adults from engaging in private consensual sexual practices common to a homosexual lifestyle.

This major premise may be reconstructed to state:

All adults may legally engage in private consensual sexual practices common to a homosexual lifestyle.

Reference is made to all adults in the above proposition; children are excluded from the proposition. As a result, all children are excluded from the class that "may legally engage in private consensual sexual practices common to a homosexual lifestyle," and all persons who "may legally engage in private consensual sexual practices common to a homosexual lifestyle" are excluded from the class of children. Moreover, in declaring that the majority's decision did not encompass children, Justice Kennedy stated:

"The present case does not involve minors. It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused. It does not involve public conduct or prostitution. It

does not involve whether the government must give formal recognition to any relationship that homosexual persons seek to enter." 156 L. Ed. 2d at 525.

Because the present case involved a 14-year-old developmentally disabled child, it is factually distinguishable from *Lawrence.*

In addition, the present case is legally distinguishable from *Lawrence.* For example, the *Lawrence* majority overruled *Bowers v. Hardwick,* 478 U.S. 186, which refused to extend to homosexuals the privacy right to be free from the criminalization of homosexual sex. In so doing, the *Lawrence* Court declared that private consensual homosexual acts between adults are protected by the Fourteenth Amendment's Due Process Clause. Nevertheless, as pointed out by the State in its brief, Limon is not asserting a *Lawrence*-like due process challenge. Instead, Limon makes an equal protection challenge to K.S.A. 2002 Supp. 21-3522. As a result, the law and facts are distinguishable from *Lawrence.*

### K.S.A. 21-3505(a)(2) and K.S.A. 2002 Supp. 21-3522(a)(2)

Limon was convicted of criminal sodomy under K.S.A. 21-3505(a)(2). This subsection states: "Criminal sodomy is . . . sodomy with a child who is 14 or more years of age but less than 16 years of age." This subsection prohibits sodomy with a child within the stated age limitations without regard to the age of the offender or to the sex of the participants. As a result, K.S.A. 21-3505(a)(2) is gender neutral. A violation of K.S.A. 21-3505(a)(2) is a severity level 3, person felony. K.S.A. 21-3505(c).

On the other hand, K.S.A. 2002 Supp. 21-3522(a)(2) reads:

"(a) Unlawful voluntary sexual relations is engaging in voluntary: . . . (2) sodomy . . . with a child who is 14 years of age but less than 16 years of age and the offender is less than 19 years of age and less than four years of age older than the child and child and the offender are the only parties involved *and are members of the opposite sex.*" (Emphasis added.)

In addition to the age restrictions placed on the parties and to the requirement that the parties' age difference be less than 4 years, K.S.A. 2002 Supp. 21-3522(a)(2) requires that the sodomy be consensual and that the parties be members of the opposite sex. Unlike K.S.A. 21-3505(a)(2), K.S.A. 2002 Supp. 21-3522(a)(2) is gender specific. Under K.S.A. 2002 Supp. 21-3522(a)(2), unlawful volun-

tary sexual relations (involving sodomy) is a severity level 9, person felony. K.S.A. 2002 Supp. 21-3522(b)(2).

*Rational Basis*

Limon contends that excluding gay teenagers from the protections of K.S.A. 2002 Supp. 21-3522 does not rationally advance any purpose that the statute could be expected to serve. In considering Limon's challenge to the constitutionality of K.S.A. 2002 Supp. 21-3522, we are reminded of a statement made by Justice Douglas: "It is no requirement of equal protection that all evils of the same genus be eradicated or none at all. [Citation omitted.]" *Railway Express v. New York,* 336 U.S. 106, 110, 93 L. Ed. 533, 69 S. Ct. 463 (1949).

By classifying same-sex persons as ineligible for prosecution under K.S.A. 2002 Supp. 21-3522, the Kansas Legislature has made an implicit fact-finding that same-sex sex acts are different from heterosexual sex acts. Generally, sex acts, including sodomy, between a child and an adult are illegal, unless the child is married to the adult when the sex acts occurred. See K.S.A. 2002 Supp. 21-3502(b) (rape); K.S.A. 21-3503(b) (indecent liberties with a child); K.S.A. 21-3504(b) (aggravated indecent liberties with a child); K.S.A. 21-3505(b) (criminal sodomy); K.S.A. 21-3506(b) (aggravated criminal sodomy). The question we must address is whether the legislature can punish those adults who engage in heterosexual sodomy with a child less severely than those adults who engage in homosexual sodomy with a child. The answer is yes. The legislature could have rationally determined that heterosexual sodomy between a child and an adult could be put in a class by itself and could be dealt with differently than homosexual sodomy between a child and an adult.

*Protection of Children*

The unequal position of children and their dependence, both physically and mentally, make them a proper subject for legislative protection. The United States Supreme Court, in addressing the issue of child pornography, declared:

"It is evident beyond the need for elaboration that a State's interest in 'safeguarding the physical and psychological well-being of a minor' is 'compelling.' *Globe*

*Newspaper Co. v. Superior Court*, 457 U.S. 596, 607 (1982). 'A democratic society rests, for its continuance, upon the healthy, well-rounded growth of young people into full maturity as citizens.' *Prince v. Massachusetts*, 321 U.S. 158, 168 (1944). Accordingly, we have sustained legislation aimed at protecting the physical and emotional well-being of youth even when the laws have operated in the sensitive area of constitutionally protected rights. In *Prince v. Massachusetts, supra*, the Court held that a statute prohibiting use of a child to distribute literature on the street was valid notwithstanding the statute's effect on a First Amendment activity. In *Ginsberg v. New York*, [390 U.S. 629, 637-43 (1968)], we sustained a New York law protecting children from exposure to nonobscene literature. Most recently, we held that the Government's interest in the 'well-being of its youth' justified special treatment of indecent broadcasting received by adults as well as children. *FCC v. Pacifica Foundation*, 438 U.S. 726 (1978)." *New York v. Ferber*, 458 U.S. 747, 756-57, 73 L. Ed. 2d 1113, 102 S. Ct. 3348 (1982).

Similarly, our Supreme Court has noted: "The State has a compelling interest in the well-being of its children and particularly in their protection from all forms of cruelty, neglect, degradation, and inhumanity. [Citation omitted.]" *State v. Wilson*, 267 Kan. 550, 559, 987 P.2d 1060 (1999); see also 42 Am. Jur. 2d, Infants § 36 ("It is the policy of the law to look after the interests of infants, who are considered incapable of looking after their own affairs, to protect them from their own folly and improvidence, and to prevent adults from taking advantage of them.").

Protective legislation is permissible even though based on a classification which may seem unreasonable. For example, laws based on a sexual classification are normally considered inherently unreasonable. Sexual classifications, however, have been upheld where their purpose was to protect the morals of women. Shortly after the turn of the 20th century, laws made it illegal to sell liquor to women. See *Cronin v. Adams*, 192 U.S. 108, 114-15, 48 L. Ed. 365, 24 S. Ct. 219 (1904); *Eskridge v. Division of Alcoholic Beverage Control*, 30 N.J. Super. 472, 477-78, 105 A.2d 6 (1954); see also *Randles v. State Liquor Control Bd.*, 33 Wash. 2d 688, 698-99, 206 P.2d 1209 (1949) (prohibiting the sale of liquor to women except under certain conditions). Likewise, state legislatures have used the same rationale in making it illegal to furnish alcoholic liquor, to sell tobacco products, and to provide pornographic material to a child. As in the case of selling liquor to women, these

laws were designed to protect the morals of children. See *Cronin*, 192 U.S. at 115. Such statutes are valid even though they may turn on a classification which is generally considered unreasonable. As a result, a classification that would normally be deemed unreasonable may be allowed when the legislature acts to protect a class and a rational basis exists for the protection of that class.

In enacting K.S.A. 2002 Supp. 21-3522, the legislature could have reasonably determined that to prevent the gradual deterioration of the sexual morality approved by a majority of Kansans, it would encourage and preserve the traditional sexual mores of society. Moreover, traditional sexual mores have played a significant role in the sexual development of children. During early adolescence, children are in the process of trying to figure out who they are. A part of that process is learning and developing their sexual identity. As a result, the legislature could well have concluded that homosexual sodomy between children and young adults could disturb the traditional sexual development of children.

Although the record reveals that M.A.R., the victim, had only one same-sex encounter with Limon, Limon labels M.A.R. as either homosexual or bisexual in his brief. Labeling M.A.R. in this way is unfair. For instance, if M.A.R.'s sexual identity was not well defined before his homosexual encounter with Limon, M.A.R. might have become confused about his sexual identity. In this case, M.A.R. was a 14-year-old developmentally disabled minor. Moreover, the record does not show that M.A.R. was either homosexual or bisexual.

Because the penalty for heterosexual sodomy with a child under K.S.A. 2002 Supp. 21-3522 is less severe than the penalty for homosexual sodomy with a child under K.S.A. 21-3505(a)(2), K.S.A. 2002 Supp. 21-3522 is designed to discourage voluntary sexual behavior between young adults and children which deviates from traditional sexual mores.

Obviously, K.S.A. 2002 Supp. 21-3522 contains a classification component: "members of the opposite sex." Nevertheless, the classification is proper because it is rationally related to the purpose of protecting and preserving the traditional sexual mores of society and the historical sexual development of children.

## Marriage and Procreation

In addition, traditional sexual mores concerning marriage and procreation have been important to the very survival of the human race. In rejecting the statutory right to sterilize a convicted felon, Justice Douglas declared: "Marriage and procreation are fundamental to the very existence and survival of the race." *Skinner v. Oklahoma*, 316 U.S. 535, 541, 86 L. Ed. 1655, 62 S. Ct. 1110 (1942). Throughout history, governments have extolled the virtues of procreation as a way to furnish new workers, soldiers, and other useful members of society. The survival of society requires a continuous replenishment of its members.

On the other hand, sexual acts between same-sex couples do not lead to procreation on their own. As the State correctly points out in its brief, "protecting and advancing the family has been a legitimate governmental aim" throughout written history. Moreover, the family is commonly recognized as the unit for the procreation and the rearing of children.

## Parental Responsibility

Additionally, sexual contact between minors and young adults can lead to unwanted pregnancies. Rearing children is not an overnight occurrence. Parents have a common law, as well as a statutory, duty to furnish support to their minor child. This duty applies equally to parents of a child born out of wedlock. *State ex. rel. Hermesmann v. Seyer*, 252 Kan. 646, 652, 847 P.2d 1273 (1993).

When a child is born from a relationship between a minor and a young adult, the minor is often unable to financially support the newborn child. In many cases, the minor is still a dependent. As a result, the financial burden to support the newborn child properly falls to the young adult. Obviously, the young adult cannot furnish adequate financial support for the newborn child while he or she is incarcerated. The legislature could well have concluded that incarcerating the young adult parent for a long period would be counterproductive to the requirement that a parent has a duty to provide support to his or her minor child. See *State v. Crawford*, 21 Kan. App. 2d 859, 861, 908 P.2d 638 (1995) (holding that defend-

ant's obligation to raise her children along with several other factors justified a downward sentence departure).

On the other hand, same-sex relationships do not generally lead to unwanted pregnancies. As a result, the need to release the same-sex offender from incarceration is absent. Equal protection is satisfied because K.S.A. 2002 Supp. 21-3522 is rationally related to the State's legitimate interest in getting a young adult parent involved in providing financial support for the newborn child.

*Prevention of Sexually Transmitted Disease*

The State has argued that lessening the penalty for heterosexual activity between adults and children as opposed to homosexual activity between adults and children may reduce the spread of sexually transmitted diseases. The legislature could well have considered that same-sex sexual acts between males might increase their risk of contracting certain infectious diseases. Medical literature is replete with articles suggesting that certain health risks are more generally associated with homosexual activity than with heterosexual activity. Accordingly, we determine that K.S.A. 2002 Supp. 21-3522(a)(2) is rationally related to the State's legitimate interest in public health.

*Punishment*

Next, Limon maintains that his punishment under K.S.A. 21-3505(a)(2) is significantly more severe than the punishment administered to individuals who commit unlawful voluntary heterosexual sex acts under K.S.A. 2002 Supp. 21-3522(a)(2). We agree. Nevertheless, "[w]hatever views may be entertained regarding severity of punishment, whether one believes in its efficacy or its futility, [citation omitted,] these are peculiarly questions of legislative policy." *Gore v. United States*, 357 U.S. 386, 393, 2 L. Ed. 2d 1405, 78 S. Ct. 1280 (1958). Moreover, in stating that the authority to fix or to impose a particular penalty for a crime rests with the legislature, our Supreme Court has declared: "The power to prescribe the penalty to be imposed for the commission of a crime rests exclusively with the legislature, not the courts." *State v. Keeley*, 236 Kan. 555, 560, 694 P.2d 422 (1985). Because we have previously determined that the line drawn by the Kansas Legisla-

ture has a rational basis, K.S.A. 2002 Supp. 21-3522(a)(2) does not violate the Equal Protection Clause.

*Cruel and Unusual Punishment*

In addition, in a footnote, Limon maintains that his conviction and sentence violate the Eighth Amendment to the United States Constitution by punishing him based on his status as a teenager having a same-sex sexual orientation. In support of his argument, Limon cites *Robinson v. California,* 370 U.S. 660, 8 L. Ed. 2d 758, 82 S. Ct. 1417 (1962). Nevertheless, unlike *Robinson,* where the United States Supreme Court struck down a statute that made it an offense for a person to "be addicted to the use of narcotics," same-sex sexual orientation has not been shown to be a condition or illness that would compel a young adult to engage in sodomy with a child. See *Powell v. Texas,* 392 U.S. 514, 552-54, 20 L. Ed. 2d 1254, 88 S. Ct. 2145 (1968) (White, J., concurring). In *Powell,* the defendant, a chronic alcoholic, was convicted of being drunk in public. In determining that the statute making public drunkenness an offense did not amount to cruel and unusual punishment, the Court concluded that the offense of public drunkenness consisted not of the condition of being a chronic alcoholic. Instead, the offense consisted of defendant's conduct of being drunk while in public, a situation over which defendant had some control. 392 U.S. at 531-37.

Finally, Limon argues that his sentence of 206 months is disproportionate to the crime of criminal sodomy under K.S.A. 21-3505(a)(2). Nevertheless, Limon fails to show that his sentence, due in large part to his prior adjudications for aggravated criminal sodomy, is unconstitutionally disproportionate to the offense of criminal sodomy, a severity level 3 person felony. Violation of K.S.A. 21-3505(a)(2) constitutes a felony of the same severity level as a violation of K.S.A. 21-3504(a)(1) (sexual intercourse with a child of 14 or 15 years of age). See K.S.A. 21-3504(c). To insist that Limon's sentence, based on his two prior adjudications for aggravated criminal sodomy, is cruel and unusual flies in the face of reason. Because Limon's sentence does not come within the ban

against cruel and unusual punishment under the Eighth Amendment, Limon's argument fails.

*Gender*

Limon further argues that had he been a female engaging in this illegal activity, the activity would have been covered under K.S.A. 2002 Supp. 21-3522. As a result, Limon contends that because K.S.A. 2002 Supp. 21-3522 unconstitutionally discriminates on the basis of gender, the statute should be subject to a heightened scrutiny. Limon relies on *Loving v. Virginia,* 388 U.S. 1, 18 L. Ed. 2d 1010, 87 S. Ct. 1817 (1967), and *McLaughlin v. Florida,* 379 U.S. 184, 13 L. Ed. 2d 222, 85 S. Ct. 283 (1964). Nevertheless, *Loving* and *McLaughlin* do not bear the weight of reliance which Limon places on these cases.

When one contrasts the freedom to marry someone of one's own choosing with the right to engage in homosexual sodomy, a clear distinction is apparent. In *Loving,* the Court pointed out that "[t]here can be no doubt that restricting the freedom to marry solely because of racial classification violates the central meaning of the Equal Protection Clause." 388 U.S. at 12. Later, the *Loving* Court stated that the Virginia miscegenation statutes deprived the Lovings of liberty without due process of law in violation of the Due Process Clause of the Fourteenth Amendment. The *Loving* Court declared that the Virginia law was "designed to maintain White Supremacy." As a result, because the classification in *Loving* was based on race, a strict scrutiny review was applied. 388 U.S. at 11-12.

*McLaughlin* is also distinguishable from the present case. Like *Loving,* the statute in *McLaughlin* made a classification based on race. As a result, the *McLaughlin* Court determined that "rigid scrutiny" should apply. 379 U.S. at 195-96.

The classifications in both *Loving* and *McLaughlin* were based on race. Race is one of those characteristics over which an individual has no control. The mere fact of being of a certain race is constitutionally irrelevant. *Edwards v. California,* 314 U.S. 160, 184-85, 86 L. Ed. 119, 62 S. Ct. 164 (1941) (Jackson, J., concur-

ring). As a result, a classification based on race is generally considered to be inherently unreasonable and unjustifiable.

On the other hand, the *Lawrence* Court refused to hold that homosexuality was constitutionally irrelevant and deserving of a strict scrutiny review. Unlike the individuals in *Loving* and *McLaughlin*, who had no control over their race, the offense with which Limon was charged was not based on his sexual orientation or his gender, but was based on his conduct of engaging in sodomy with a child, conduct over which Limon had some control. To say otherwise, we would have to believe that an adult with an irresistible urge to engage in sodomy with a child should not be punished for such behavior. As a result, *Loving* and *McLaughlin* are clearly distinguishable from the present case.

Further, Limon's "had he been a female" argument is flawed. There has been no evidence that limiting the applicability of K.S.A. 2002 Supp. 21-3522 to members of the opposite sex was motivated by a gender bias. Although K.S.A. 2002 Supp. 21-3522 is gender specific, it creates no discernible difference between the sexes. For instance, K.S.A. 2002 Supp. 21-3522 neither disadvantages nor advantages men or women. The statute places both men and women under the same restrictions and similarly excludes them from the statute's applicability when they engage in same-sex sex acts. We determine that the classification embodied in K.S.A. 2002 Supp. 21-3522 is not quasi-suspect. As a result, Limon's argument that K.S.A. 2002 Supp. 21-3522 discriminates based on gender fails.

*Romer v. Evans*

Limon maintains that *Romer v. Evans*, 517 U.S. 620, 134 L. Ed. 2d 855, 116 S. Ct. 1620 (1996), controls the disposition of his argument that K.S.A. 2002 Supp. 21-3522 discriminates against gay teenagers. We disagree. In *Romer*, the United States Supreme Court determined that a Colorado constitutional amendment prohibiting government action designed to protect homosexuals from discrimination violated the Equal Protection Clause. 517 U.S. at 631-36. Applying a rational basis standard of review, the Court invalidated the amendment. In invalidating the amendment, the *Romer* Court focused on the apparent animosity toward gay people

in enacting the amendment. The Court stated that the amendment drew a classification "for the purpose of disadvantaging the group burdened by the law." 517 U.S. at 633.

Unlike *Romer*, the instant case deals with two criminal statutes: K.S.A. 21-3505 and K.S.A. 2002 Supp. 21-3522. As stated earlier, Limon was charged with criminal sodomy under K.S.A. 21-3505(a)(2). This subsection of the statute does not disadvantage gay teenagers burdened by the law. K.S.A. 21-3505(a)(2) is gender neutral. It prohibits sodomy with a child within the stated age limitations without regard to the age of the offender or to the sex of the participants. Lack of consent is not an element under K.S.A. 21-3505(a)(2). Moreover, if there is no consent, aggravated criminal sodomy can be charged. K.S.A. 21-3506(a)(3).

Kansas, like other states, prohibits sex offenses such as rape, sodomy, indecent liberties with a child, and sexual battery. The severity level of these offenses depends on the sexual act of the defendant and on the age of the victim, not on the status of the offender. As a result, K.S.A. 21-3505(a)(2) is based on the conduct of engaging in sodomy with a child and not based on the offender's sexual orientation or gender. On the other hand, in *Romer*, the challenged legislation concerned the sexual orientation of the class, which is a significant difference between *Romer* and the present case.

Likewise, K.S.A. 2002 Supp. 21-3522(a)(2) does not disadvantage gay teenagers burdened by the law. Sodomy with a child is punishable under both K.S.A. 21-3505(a)(2) and K.S.A. 2002 Supp. 21-3522(a)(2). Although sodomy is punished more harshly under K.S.A. 21-3505(a)(2) than under K.S.A. 2002 Supp. 21-3522(a)(2), the legislature may enact laws punishing one class less severely than another class for the same crime. For instance, youthful offenders are not subject to the same penalties as adult offenders. In addition, first-time offenders are not subject to the same length of sentence as mature recidivists.

As discussed earlier, the courts have upheld classifications protecting children based on their physical and mental immaturity. Moreover, many of those classifications have been upheld by the courts based solely on protecting the morals of children. Because

we have previously determined that a rational basis exists for placing adult heterosexual sex acts with children in a class by themselves and that these acts may be dealt with differently than adult homosexual sex acts with children, Limon's reliance on *Romer* is misplaced.

*Remedy*

As a final point, Limon contends that the language "and are members of the opposite sex" should be eliminated from K.S.A. 2002 Supp. 21-3522 so that both same-sex and opposite-sex couples could be sentenced under this statute. Because we have already determined that the statute withstands rational basis review, it is unnecessary to address this issue any further. Nevertheless, we wish to make clear that even if the statute were declared unconstitutional, the proper remedy would be to strike down the entire statute.

In addressing the issue of whether a statute can stand after a portion of it has been declared unconstitutional, our Supreme Court has stated:

"Whether the court may sever an unconstitutional provision from a statute and leave the remainder in force and effect depends on the intent of the legislature. If from examination of a statute it can be said that the act would have been passed without the objectional portion and if the statute would operate effectively to carry out the intention of the legislature with such portion stricken, the remainder of the valid law will stand." *State ex rel. Tomasic v. Unified Gov. of Wyandotte Co./ Kansas City*, 264 Kan. 293, Syl. ¶ 16, 955 P.2d 1136 (1998).

Upon examination of K.S.A. 2002 Supp. 21-3522, we cannot say that the statute would have passed without the language "and are members of the opposite sex." The history of the statute, coupled with its clear wording, reveals that the legislature intended to impose this penalty only on young couples of the opposite sex. The striking of the language "and are members of the opposite sex" would alter the statute from gender specific, which clearly was the intent of the legislature, to gender neutral. Moreover, the striking of the previously mentioned language would enlarge the statute beyond its obvious statutory limits or boundaries. As a result, the remedy suggested by Limon would require us to make a statutory

revision that would replace the intent of the legislature, which we cannot do. See *State v. Patterson,* 25 Kan. App. 2d 245, 248, 963 P.2d 436, *rev. denied* 265 Kan. 888 (1998).

Affirmed.

MALONE, J., concurring: I concur that the constitutionality of K.S.A. 2002 Supp. 21-3522 should be upheld by the court.

Initially, I have no difficulty concluding that the statute in question does not violate the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution, as the dissenting opinion ultimately concludes. This argument is not advanced by Limon or by any *amicus curiae* brief filed in this case. A proper due process analysis would require this court to conclude that Limon has a constitutionally protected liberty interest to engage in homosexual activity with a minor. Clearly, no such right exists. If K.S.A. 2002 Supp. 21-3522 is unconstitutional, it is due to a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, not the federal Constitution's Due Process Clauses.

Limon advances two arguments in this case, both grounded in equal protection. First, Limon argues that K.S.A. 2002 Supp. 21-3522 unlawfully discriminates based upon sexual orientation. Second, Limon argues that the statute unlawfully discriminates based upon gender.

Limon's argument that the statute discriminates based upon gender is without merit. K.S.A. 2002 Supp. 21-3522 discriminates against sexual activity between members of the same sex, whether the partners be male or female. Thus, the statute discriminates based upon sexual orientation but not based upon gender. If an 18-year-old female engages in sexual activity with a 14-year-old female, the female cannot be prosecuted under 21-3522. Thus, the statute treats same-sex activity between females equally with same-sex activity between males. There is no discrimination based upon gender.

The central issue in this case is whether K.S.A. 2002 Supp. 21-3522 unlawfully discriminates based upon sexual orientation. In *State v. Limon,* Case No. 85,898, unpublished opinion filed Feb-

ruary 1, 2002 (*Limon I*), this court never applied an equal protection analysis to 21-3522. Instead, the court concluded that any such analysis was foreclosed by *Bowers v. Hardwick*, 478 U.S. 186, 92 L. Ed. 2d 140, 106 S. Ct. 2841 (1986), which denied constitutional protection to homosexuals engaged in sodomy, even in the privacy of the home.

This case was remanded to the Court of Appeals for further consideration in light of *Lawrence v. Texas*, 539 U.S. 558, 156 L. Ed. 2d 508, 123 S. Ct. 2472 (2003), which overruled *Bowers*. Although *Bowers* is now removed from consideration, the majority opinion in *Lawrence* provides no additional support for Limon's arguments that K.S.A. 2002 Supp. 21-3522 violates equal protection.

*Lawrence* is not applicable to either the law or the facts of this case. The facts are clearly distinguishable. *Lawrence* involved two consenting adults having sexual relations in the privacy of their own home. This case involves an adult having sex with a minor in a state-run facility. More importantly, *Lawrence* is not applicable to the law of this case. *Lawrence* was not decided on equal protection grounds. Instead, it was decided on due process and privacy grounds. This distinction is significant and controls the outcome of this case.

*Lawrence* did not confer suspect class status on homosexuals, and in fact it specifically declined to do so. Therefore, Limon's arguments are not viewed under a strict scrutiny analysis but must be viewed pursuant to the rational basis test. The question before us is not whether a rational basis exists to punish a young adult for engaging in homosexual activity with a child. The question is whether a rational basis exists to treat homosexual activity with a child differently from heterosexual activity with a child.

Under the rational basis test, legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. *Romer v. Evans*, 517 U.S. 620, 632-33, 134 L. Ed. 2d 855, 116 S. Ct. 1620 (1996). This does not mean that a court must grant unrestrained approval of all legislative action. A court's duty to nullify an unconstitutional statute is one of the cornerstones of our governmental system of checks

and balances. However, those attacking the rationality of a legislative classification have the burden to negate every conceivable basis which might support the statute. *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364, 35 L. Ed. 2d 351, 93 S. Ct. 1001 (1973). A legislative classification must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 313, 124 L. Ed. 2d 211, 113 S. Ct. 2096 (1993).

"Moreover, because we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature. [Citations omitted.] . . . In other words, a legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data. [Citations omitted.] " 'Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function.' " [Citations omitted.]" *Beach Communications, Inc.*, 508 U.S. at 315.

Furthermore, under a rational basis analysis, a court is not bound by explanations of a statute's rationality offered by the legislature, litigants, or other courts, but may also consider any other rational purposes possibly motivating enactment of the challenged statute. *Kadrmas v. Dickinson Public Schools*, 487 U.S. 450, 463, 101 L. Ed. 2d 399, 108 S. Ct. 2481 (1988). Finally, a law will be sustained under the rational basis test if it can be said to advance a legitimate interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous. *Romer*, 517 U.S. at 632.

The argument that K.S.A. 2002 Supp. 21-3522 is unconstitutional focuses on Limon's rights at the expense of the victim's. *Lawrence* holds that homosexual activity between consenting adults in the privacy of the home cannot be prosecuted as a crime. It is one thing to recognize that the government should have no interest in private sexual activity between consenting *adults*. It is another thing to argue that the government has no rational basis to distinguish between heterosexual activity and homosexual activ-

ity when it comes to protecting the rights of 14-and 15-year-old children.

As the majority opinion suggests, at this age a child's sexual orientation is more than likely not fully developed. Adolescents are at a higher risk for acquiring sexually transmitted diseases than adults.[1] All sexual activity imposes health risks. However, as the majority opinion points out, there are certain health risks more generally associated with homosexual activity than with heterosexual activity, especially among males.[2] This does not mean that all homosexual activity between males results in sexually transmitted disease, but the risk appears to be increased. Admittedly female-with-female sex has a lower potential for spreading sexually transmitted disease. However, a legislative classification not involving fundamental rights is not required to be drawn with precision. Furthermore, excluding from 21-3522 only same-sex activity between males *would* involve gender discrimination which presumably the legislature should try to avoid.

I cannot embrace every rational basis suggested in the majority opinion for upholding the constitutionality of K.S.A. 2002 Supp. 21-3522, and in fact I disagree with many of the positions advanced in the majority opinion. However, if the only rational basis justifying the statute is the legislature's intention to protect children from increased health risks associated with homosexual activity until they are old enough to be more certain of their choice, it is within the legislature's prerogative to make that determination. This rationale, although tenuous in some respects, provides a "reasonably conceivable state of facts" sufficient to justify the statutory classification.

---

[1] *2002 Sexually Transmitted Disease Surveillance Report, Special Focus Profile, STDs in Adolescents and Young Adults,* U.S. Centers for Disease Control and Prevention, http://www.cdc.gov/stats.adol.htm.

[2] According to the U.S. Centers for Disease Control and Prevention, the estimated number of diagnosed AIDS cases through 2002 among males caused by male-to-male sexual contact is 420,790. The estimated number of diagnosed AIDS cases through 2002 among males caused by heterosexual contact is 50,793. See *2002 HIV/AIDS Surveillance Report,* U.S. Centers for Disease Control and Prevention, http://www.cdc.gov/hiv/stats.htm.

In Limon's case, the sentencing disparity between a conviction of sodomy and a conviction under 21-3522 is alarming. However, this reflects a problem with our state's sentencing guidelines rather than implicating the constitutionality of the statute. The legislature can address the inequity suffered by Limon and others in his position without this court declaring the present statute unconstitutional.

In summary, Limon makes many persuasive arguments that the classification under 21-3522 should not survive judicial scrutiny even under the rational basis test and therefore violates the federal Constitution's Equal Protection Clause. However, considering the degree of legislative deference required by this analysis, and given the existing legal precedent to guide this court, I conclude that the statute withstands constitutional challenge. As stated by this court in *Limon I*, "We have no indication that the United States Supreme Court or the Kansas Supreme Court would adopt the position taken by Limon." We still do not have any such indication. This court is in the same position as when *Limon I* was decided—without legal precedent or authority to declare K.S.A. 2002 Supp. 21-3522 unconstitutional.

To paraphrase the court's conclusion in *Limon I*, this opinion does not deal with the wisdom of the statute involved, as that is left to the legislature in our governmental system with its separation of powers.

PIERRON, J., dissenting: I respectfully dissent.

Matthew Limon was born on February 9, 1982. Both he and M.A.R., whose date of birth is March 17, 1985, are mildly mentally disabled. Limon and M.A.R. were residents of a school for the developmentally disabled. On February 16, 2000, Limon asked M.A.R. if he could perform oral sodomy on M.A.R. M.A.R. consented, and when he told Limon to stop, Limon did so. The incident came to the attention of the police. Limon admitted what he had done and was charged with criminal sodomy pursuant to K.S.A. 21-3505(a)(2), which provides in part: "(a) Criminal sodomy is: . . . (2) sodomy with a child who is 14 or more years of age but less than 16 years of age."

Limon filed a motion to dismiss the charge, arguing that he should have been charged with unlawful voluntary sexual relations under K.S.A. 2002 Supp. 21-3522(a)(2), the "Romeo and Juliet law." This law states in part:

"(a) Unlawful voluntary sexual relations is engaging in voluntary . . . (2) sodomy . . . with a child who is 14 years of age but less than 16 years of age and the offender is less than 19 years of age and less than four years of age older than the child and the child and the offender . . . are members of the opposite sex."

The purpose of the Romeo and Juliet law was apparently to reflect the judgment that consensual sex between males and females of the specified ages should have a less severe punishment than consensual sex between older males (usually) and young females. A violation of K.S.A. 2002 Supp. 21-3522(a)(2) (the Romeo and Juliet provision) is a severity level 9 person felony. A violation of K.S.A. 21-3505(a)(2) (criminal sodomy) is a severity level 3 person felony. With no previous criminal record a level 9 crime has a sentencing range of 5 to 7 months with presumptive probation. A level 3 crime has a range of 55 to 61 months with presumptive imprisonment.

Limon argued unsuccessfully to the trial court that the greater penalty for being of the same sex violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by discriminating based on his sex and sexual orientation.

The case was tried on stipulated facts and Limon was convicted as charged. Limon had two previous adjudications for sexual relations with minors. Had Limon been of the opposite sex from M.A.R., with his criminal history and crime severity level, his sentence range would have been 13 to 15 months' imprisonment. Since he was the same sex as M.A.R., the sentence range was 206 to 228 months. The court imposed a sentence of 206 months—17 years and 2 months.

Limon appealed to our court. *State v. Limon,* Case No. 85,898, unpublished opinion filed February 1, 2002. We affirmed the sentence and denied the constitutional argument on the basis that *Bowers v. Hardwick* 478 U.S. 186, 106 S. Ct. 2841, 92 L. Ed.2d 140 (1986) had denied constitutional protection to persons claiming discrimination based on homosexuality.

Review was denied by the Kansas Supreme Court. An appeal was taken by Limon to the United States Supreme Court, which granted his petition for certiorari, vacated our judgment, and remanded the case to this court for reconsideration in light of the decision in *Lawrence v. Texas* 539 U.S. 558, 156 L. Ed. 2d 508, 123 S. Ct. 2472 (2003). *Lawrence* essentially decriminalized consensual homosexual acts between adults by declaring unconstitutional the Texas statute which made them a crime. *Lawrence* also explicitly overruled *Bowers* as having been wrongly decided. 156 L. Ed. 2d at 525.

Limon does *not* contend there should be no punishment for his acts. This was reemphasized at oral argument by his counsel. It is the great difference in punishment, based on the sex of the participants, that is challenged. This is important to remember because the State and the majority often appear to approach this appeal as if the issue was whether same-sex sexual relations between adults and minors should be decriminalized. As will be seen, this leads to what appear to be inappropriate arguments being put forward in defense of the disparate sentences.

The State presents three threshold arguments: (1) The facts of the instant case are significantly different from those in *Lawrence*, making *Lawrence* inapplicable; (2) the *Lawrence* Court excluded sex with minors from the scope of the ruling; and (3) "[t]his court cannot interfere with the legislative function because that function is left to the legislative branch pursuant to the separation-of-powers doctrine."

Considering the first argument, there are obviously different facts in *Lawrence*. But there are principles that serve as the basis for *Lawrence* and the overruling of *Bowers* which appear to be applicable to Limon's case. The United States Supreme Court has directed us to reconsider this case in light of *Lawrence*. I presume it wishes us to apply those principles to our case as appropriate. They will be discussed in detail below.

The second argument is that *Lawrence* stated it did not involve minors and that this admonition would make it specifically inapplicable to the instant case. *Lawrence* involved the decriminalization of consensual homosexual sex between adults. The Supreme

Court's disclaimer in *Lawrence* appeared to serve as a notice that the decriminalization did not extend to laws outlawing sex with minors. There is no conflict with that ruling and the relief being sought here. This case does not deal with decriminalizing sex with minors either. It deals only with great differences in sentences based on the sex of the participants.

As to the separation of powers, this principle is respected and followed every working day in the Kansas courts. An apt example is the first appellate decision in this case where, after determining there was no constitutional bar to the disparate sentence due to *Bowers*, we deferred to the legislative determination that it was appropriate. Because of *Lawrence* there is now a constitutional question. The State's argument that "[t]his court cannot interfere with the legislative function because that function is left to the legislative branch pursuant to the separation-of-powers doctrine," is circular reasoning and begs the question on the issue involved. The matter before us is whether part of the legislation here violates the United States Constitution as interpreted by the United States Supreme Court in *Lawrence*. That which violates the Constitution is not a proper exercise of the legislative function.

As was established in the seminal case on the separation of powers between the courts and the legislative branch, *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L. Ed. 60 (1803), the courts must be able to review legislative enactments for their adherence to the Constitution or there is no effective protection of the people's constitutional rights from legislative overreaching. The 200-year-old principle of judicial review is a basic safeguard of the rights of Americans.

The *amicus curiae* brief of 25 of our Kansas state legislators notes Justice Douglas pointed out that the United States Supreme Court does "not sit as a super-legislature to determine the wisdom, need, and propriety of laws that touch economic problems, business affairs, or social conditions." *Griswold v. Connecticut*, 381 U.S. 479, 482, 14 L. Ed. 2d 510, 85 S. Ct. 1678 (1965). However, Justice Douglas went on in that same opinion to speak for the Court in striking down the state of Connecticut's anti-birth control laws as being unconstitutional. 381 U.S. at 481-86. As demonstrated by

the legislators' brief, while there is usually deference given to legislative judgments involving the wisdom or need for laws, this deference is not unlimited. It does not apply to unconstitutional laws.

The threshold issues raised by the State do not prevent a review of this case in light of the *Lawrence* decision.

In applying *Lawrence*, we must apply principles of a decision dealing with consensual acts between adults to our case of consensual acts between a young adult and a minor. Our focus is not on whether the act involved is criminal; due to the age of one of the participants, it is. The issue we must resolve is if it is constitutional that the sentence for the commission of an identical act can be more than 15 times as long because the participants were of the same sex.

We first turn, as did the *Lawrence* Court, to the core holdings in *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992), and *Romer v. Evans*, 517 U.S. 620, 116 S. Ct. 1620, 134 L. Ed. 2d 855 (1996). *Casey* appears to have limited applicability as it deals with personal autonomy issues involved in a reproductive freedom context. Our case involves criminal activity with a minor. *Casey*, however, does indicate that matters involving sexual morality are not the exclusive domain of legislatures.

The issues involved in *Romer* are more to the point. There, the Court struck down legislation aimed specifically at homosexuals, which deprived them of rights in the political process. The basis for that decision was the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *Romer* appears to stand for the proposition that legislation impacting on sexuality is subject to analysis for constitutionality when it discriminates between different classes or groups of citizens. 517 U.S. at 631-636. This is particularly true in a criminal justice context where the stakes can be quite high, even when the penalties may not seem great. *Lawrence*, 156 L. Ed. 2d at 523-24. In the instant case, where we are talking about many years of incarceration, it is certainly true.

*Lawrence*, which dealt with a criminal prosecution, was decided on the basis of the Due Process Clauses of the Fifth and Four-

teenth Amendments. 156 L. Ed. 2d at 525-26. Justice O'Connor, in her concurrence, also implicated the Equal Protection Clause. 156 L. Ed. 2d at 526. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law; nor deny any person within its jurisdiction the equal protection of the laws." Sections 1 and 2 of the Bill of Rights of the Kansas Constitution provide a state counterpart to the federal provision. "[T]hese two provisions are given much the same effect as the clauses of the Fourteenth Amendment relating to due process and equal protection of the law." *Farley v. Engelken,* 241 Kan. 663, 667, 740 P.2d 1058 (1987). The Fifth and the Fourteenth Amendments have essentially the same language as to due process.

The United States Supreme Court applies three levels of scrutiny or review when examining legislative enactments which treat differently classified persons unequally to determine if there is a denial of constitutional due process or equal protection. Classifications involving "suspect" classes or fundamental rights are examined under "strict scrutiny," which shifts the presumption against a statute's usually presumed constitutionality and requires the State to demonstrate that the classification is necessary to serve a compelling state interest. *Shapiro v. Thompson,* 394 U.S. 618, 634, 22 L. Ed. 2d 600, 89 S. Ct. 1322 (1969). Fundamental rights recognized by the Supreme Court include marriage, contraception, voting, and travel. See *Loving v. Virginia,* 388 U.S. 1, 18 L. Ed. 2d 1010, 87 S. Ct. 1817 (1967); *Griswold,* 381 U.S. 479; *Hill v. Stone,* 421 U.S. 289, 44 L. Ed. 2d 172, 95 S. Ct. 1637 (1975); *Shapiro,* 394 U.S. 618. The suspect classes which the Court has recognized include alienage, race, and ancestry. See *Graham v. Richardson,* 403 U.S. 365, 29 L. Ed. 2d 534, 91 S. Ct. 1848 (1971); *McLaughlin v. Florida,* 379 U.S. 184, 13 L. Ed. 2d 222, 85 S. Ct. 283 (1964); *Oyama v. California,* 332 U.S. 633, 92 L. Ed. 249, 68 S. Ct. 269 (1948).

A less stringent standard is "heightened scrutiny," which applies to "quasi-suspect" classes, such as gender, and requires the classification to substantially further a legitimate legislative purpose. *Farley,* 241 Kan. at 669.

The least stringent test is the "rational basis" test. Under this test the State must only show the statutory classification bears some rational relationship to a valid legislative purpose in order to discriminate. *KPERS v. Reimer & Koger Assocs., Inc.*, 261 Kan. 17, 41-42, 927 P.2d 466 (1966). The rational basis test, which was used by the Supreme Court in *Lawrence*, should also be used here. This gives the greatest amount of deference to the legislature.

The legislative judgment on the immorality of homosexuality is argued extensively in the State's brief and the legislators' *amicus* brief as a justification for the widely differing penalties. The applicable arguments in the State's brief are clearly titled: "C. The State Legislates, and Its Legislation is Often Based Upon a Pre-Existing Morality" and "I. It Is Left To The Legislature— And Not This Court—To Legislate Morality." The applicable argument in the legislators' brief is also aptly titled: "The Kansas Legislature, And Not The Judiciary, Is Charged With The Obligation To Make Moral Decisions About What Conduct Should Be Criminalized, And Should Not Be Second Guessed Where Neither A Fundamental Right Nor A Suspect Classification Is Involved."

Of course, morality is often involved in the formation of criminal law. The problem with the State's argument is the implication that morality judgments by the legislature are the only considerations in cases of this kind and that the legislature is the only branch of government with any input as to what can be considered criminal. This is not the law. Simply because a majority of the legislature thinks something is immoral does not mean it can make it criminal and be free from having that decision reviewed by the courts. As noted earlier, the deference of the courts to legislative judgments does not extend to the rare instances where that branch exceeds the limits of the people's constitutional protections. *Lawrence* is only the most recent example of the duty of the courts to protect the constitutional rights of all people and not just those with whose code of morality we fully agree.

The act involved here is criminal. But if the penalty for the act is not the same for all, the difference must be justified on some rational basis. Simple moral disapproval or dislike of a certain group

does not satisfy the constitutional requirements which courts must apply.

"Our obligation is to define the liberty of all, not to mandate our own moral code." *Casey*, 505 U.S. at 850.

"[A] bare . . . desire to harm a politically unpopular group" is not a valid justification that will meet the requirements to show a legitimate state interest. *United States Dept. of Agriculture v. Moreno*, 413 U.S. 528, 534, 37 L. Ed. 2d 782, 93 S. Ct. 2821 (1973).

Legislative disapproval of homosexuality alone is not enough to justify any measures the legislature might choose to express its disapproval. Under the rational basis test, there must be a showing that the measures adopted have a rational relationship to a legitimate legislative concern.

In its brief the State contends it has no need of "costly experts," nor has it taken any "heroic steps," such as presenting any arguments from the law's legislative history, to support the rationality of the provision involved. Clearly, there was nothing in the way of expert testimony presented supporting the measure, and the legislative history appears to have nothing in support of the provision at issue. What is presented by the State to establish a rational basis for the law, other than the general moral judgment, are three arguments accurately summarized by their headings: "It is Rational for the State to Value Relationships that May Culminate in Marriage over Relationships that cannot culminate in Marriage"; "It is Rational for the State to Value Human Relationships Less Likely to Spread Disease Pathogens"; and "It is Rational for the State to Value Relationships Leading to Pro-creation."

We must examine the reasons asserted by the State to determine if they provide a rational basis for enacting the discriminatory sentence provision. The State argues that the responses of government to problems of this kind may sometimes seem to be "illogical and unscientific." The State appears to contend that almost any argument presented in support of a legislative enactment must be found to supply a rational basis for the law, even if it appears to be irrational. The State rather overstates the degree of deference that should be and is granted to implied legislative findings. A rational basis must be rational and supported by a reasonable cause and

effect relationship to qualify. Otherwise, judicial review would be meaningless. We grant deference, not blind acquiescence, to legislative findings.

Two of the reasons given by the State, those of encouraging marriage and human procreation, are very odd justifications for having much greater criminal penalties for a male performing oral sodomy on a male minor than for a female performing the same act on the same minor. As a matter of legislative policy in Kansas, marriage and procreation between adults and minors are *dis*couraged. Although skillfully defended at oral argument by the State, it is incomprehensible that this law has anything to do with encouraging marriage and procreation between the victim and the assailant, or anyone else, as is apparently claimed by the State and approved by the majority. At least, no connection has been shown.

There is a facial connection between penalizing consensual criminal sexual relations with a minor and concerns about venereal diseases. However, there is no reasonable support presented for much greater criminal punishments for any homosexual acts than for any heterosexual acts.

One must first note the obvious fact that there is no difference in the penalties imposed under the Kansas law based on whether the defendant actually does or does not have a venereal disease. This is a very important omission if the law was truly concerned about venereal disease. Perhaps even more unusual is that under the law a female infected with every venereal disease yet identified, and engaging in acts quite likely to infect or actually infecting a male minor, will receive a much lighter sentence. A disease-free male engaging in sex with another male in a manner not likely to spread disease if it was present will receive a much heavier sentence. Perversely, under the law, a male with a venereal disease who infects and impregnates an underage female will also receive a much lighter sentence. We must also recognize the inapplicability of much of this rationale as it applies to female-with-female sex, which usually has an extremely low potential for spreading venereal disease but receives the higher penalty.

The State and the majority attempt to draw a nexus by pointing to the higher incidence of AIDS among homosexuals than the pop-

ulation in general. However, no attempt is made to draw a connection between punishing any particular individual and the likelihood of that person spreading a disease. Group guilt is not a favored concept in American law. What is the rationality of a law that would punish persons 15 times longer because they may belong to a group that has a higher incidence of AIDS, notwithstanding the fact that there is no evidence the defendant had AIDS or any other disease? This is especially puzzling when, as noted above, a person who actually has AIDS and engages in sex with a minor will receive a much lighter sentence if the defendant is of the opposite sex from the minor.

It is difficult to conclude that any concern over the spread of disease is factually and logically related enough to establish a rational basis for the huge difference in sentences.

The majority, in an attempt to add weight to the State's position, offers a number of other arguments. It first notes:

"Unlike individuals in *Loving* and *McLaughlin*, who had no control over their race, the offense with which Limon was charged was not based on his sexual orientation or his gender, but was based on his conduct of engaging in sodomy with a child, conduct over which Limon had some control. To say otherwise, we would have to believe that an adult with an irresistible urge to engage in sodomy with a child should not be punished for such behavior."

As noted earlier, the issue in this appeal is not whether the act is criminal; it is. The issue in this appeal is whether two different people, with the same criminal history, performing the same act, can constitutionally receive vastly different sentences based on the sexes of the parties involved. The majority's attempt to divert attention from the real issue by setting up a straw man argument that has never been made, and has been specifically denied and repudiated by Limon, contributes nothing to a valid analysis of this issue.

· The majority also attempts to tie this case in with society's attempts to protect children from being involved in pornography or being provided with alcohol or tobacco. Again, the case is not about the illegality of the acts involved. Society should protect minors from premature sexual activity, which is conceded by Limon. On the other hand, the majority ignores the fact that the very statutes

it cites concerning pornography and supplying minors with alcohol or tobacco do not provide penalties 15 times longer depending on whether the defendant was the same sex as the minor. In fact, in the majority's examples, all defendants receive the same penalty regardless of their sex.

Perhaps most unsettling about the majority's attempt to strengthen the State's case is its injection of an unsupported argument not found in the record on appeal, in the brief of the State, or in the *amicus* brief of the 25 legislators. The majority states:

"In enacting K.S.A. 2002 Supp. 21-3522, the legislature could have determined that to prevent the gradual deterioration of the sexual morality approved by a majority of Kansans, it would encourage and preserve the traditional sexual mores of society. Moreover, traditional sexual mores have played a significant role in the sexual development of children. During early adolescence, children are in the process of trying to figure out who they are. A part of that process is learning and developing their sexual identity. As a result, the legislature could well have concluded that homosexual sodomy between children and young adults deviates from the traditional sexual mores of society and the historical sexual development of children."

What is the basis for this statement ?

More confusing is the majority's argument concerning parental responsibility and unwanted pregnancies. The majority asserts:

"When a child is born from a relationship between a minor and a young adult, the minor is often unable to financially support the newborn child. In many cases, the minor is still a dependent. As a result, the financial burden to support the newborn child properly falls to the young adult. Obviously, the young adult cannot furnish adequate financial support for the newborn child while he or she is incarcerated. The legislature could well have concluded that incarcerating the young adult parent for a long period would be counterproductive to the requirement that a parent has a duty to provide support to his or her minor child. [Citation omitted.]

"On the other hand, same-sex relationships do not generally lead to unwanted pregnancies. As a result, the need to release the same-sex offender from incarceration is absent. Equal protection is satisfied because K.S.A. 2002 Supp. 21-3522 is rationally related to the State's legitimate interest in getting a young adult parent involved in providing financial support for the newborn child."

The law and its legislative history make no reference to any of this analysis. The legislative testimony about the heterosexual applications of the Romeo and Juliet law made no mention of the

desirability of getting the assailant involved in supporting any child who might be conceived. And what has any of this to do, under the facts of this case, with punishing unlawful oral sex, which not only "generally" but *never* causes pregnancies?

The reason none of these arguments seem to fit is that they do not. The purpose of the law is not to accomplish any of the stated aims other than to punish homosexuals more severely than heterosexuals for doing the same admittedly criminal acts. As we stated in the first appeal on this matter, even as we affirmed the lower court, the argument that this statute is not aimed at homosexuals cannot be made with a straight face.

If there is a rational relationship between the stated concerns and the difference in penalties, it has not been demonstrated in the record on appeal or in the briefs of the appellee and the *amicus curiae*. The portion of K.S.A. 2002 Supp. 21-3522, the Romeo and Juliet law, which effectively mandates a substantially higher sentence for the same acts, based on whether the defendant is of the same sex as the victim, is a violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution referenced in the *Lawrence* decision.

Assuming the unconstitutional language is stricken, the highest Kansas crime for which Limon can be convicted for the acts which occurred is under K.S.A. 2002 Supp. 21-3522. We should reverse and remand to the trial court for resentencing for a conviction under K.S.A. 2002 Supp. 21-3522. Striking the entire statute, as suggested by the majority, would not correct the injustice to Limon created by the unconstitutional discrimination. It would also thwart the legislative intent of providing the relief contemplated by the legislature to heterosexual situations, which no one challenges as being inappropriate.

Carved in stone above the pillars in front of the United States Supreme Court building are the words "Equal Justice Under Law." In bronze letters on the north interior wall of the Kansas Judicial Center we read "Within These Walls The Balance Of Justice Weighs Equal." There are reasons why we remind ourselves so graphically of the importance of equal justice. Persons in power and authority have historically been tempted to discriminate

against people they do not like or understand. If these personal and political dislikes become law and exceed the bounds of constitutionality, the courts have been given the duty to be the final protectors of our ideal of equality under the law. This blatantly discriminatory sentencing provision does not live up to American standards of equal justice.